LOTTINGER, Judge.
This is a suit in which the plaintiff, Fred Michael, seeks to recover from the defendant, D. J. Morgan, the sum of $676.20 allegedly due on an oral contract. It is alleged in the petition that on or about December 26, 1951, the plaintiff agreed to sell and the defendant agreed to buy Michael’s lease on a parking lot located at the southeast corner of St. Charles Street and North 'Boulevard in the City of Baton Rouge,, and further, that as part of the agreement, the defendant had agreed h} pay for all the improvements put on the lot by the plaintiff. These improvements are alleged to have consisted of ’construction and widening of two driveways, cleaning, levelling and gravelling the lot and erecting and repairing two buildings thereon. The cost of these improvements is set forth as totaling the sum of $851.20; however, it is alleged that defendant paid the sum of $175, thus leaving a balance due and owing of $676.20.
The defendant, Morgan, denied in his answer the existence of any such oral contract and averred that he had only agreed to pay plaintiff the sum of $175, representing a gravel account owed by plaintiff. Assuming the position of plaintiff in reconvention, Morgan asserted that Michael had, previous to January 1, 1952, a contract of lease on the parking lot with Mrs. Rose G. Edelman, Dr. Joseph M.' Edelman and Leonard B. Edel-man and that said lease was not assignable or transferable. The defendant then alleged that effective January 1, 1952, he obtained a lease on the lot from the Edel-mans and that during the months of January and February the plaintiff collected parking rentals totaling $72 for which sum the defendant asked judgment in recon-vention.
After trial on the merits, the lower court rendered judgment in favor of the defendant and against the plaintiff, dismissing the latter’s demand as of non-suit. The matter is now before us on appeal by the plaintiff.
From the outset it is clear that the case presents only factual issues. The principal witnesses are the parties themselves and the question for determination is simply whether or not there ever came into existence any such agreement as alleged by the plaintiff.
*362 According to the plaintiff’s testimony, he cleared the lot in July of 1951, under an oral agreement -with Mr. Leonard B. Edelman who acted individually and as the representative of his ¡co-owners. As a result of plaintiff’s efforts, a change in zoning from residential to commercial was effected and when the lot was ready for use business was commenced under a lease with the Edelmans, beginning September 1, 1951, which was to last for a period of two years. According to the plaintiff, his operation of the lot was a financial success, his testimony in this respect being that he increased his receipts from $275 in September to $500 in December. The plaintiff also testified that he was consulted by the defendant on several occasions relative to the lot and taking over the lease, that Morgan was thoroughly familiar with the improvements placed by him on the lot and the cost of same and that during the latter part of December, 1951, Morgan agreed to pay him for all of the improvements placed on the lot.
A Mr. James G. Bolton, an assistant on the lot to Michael stated that he was present when Morgan told plaintiff he would reimburse him for all improvements and that he saw them shake hands on the deal.
The defense is to some extent predicated on the provisions of Paragraph II of the lease which plaintiff 'held with the Edelmans, which reads as follows:
“This lease is personal to the lessee and he shall have no right to assign, sublet, or make any transfer of this lease either voluntary or involuntary without the advance written consent of the lessors.”
Morgan’s testimony in effect, is that while he had considered purchasing plaintiff’s lease, that upon learning of the above quoted provision he realized that plaintiff could not transfer same to him and thereafter he negotiated with the owners themselves. Some mention is made also of the fact that under the terms of the lease no improvements placed thereon by the lessee could be removed nor was he entitled to compensation for them1. Or, in other words, this part of the defense is based upon the absence of mutuality of obligation and lack of consideration for any alleged promise to pay.
In addition, of course, Morgan’s testimony is that he did not agree to- pay for the improvements. Mr. Leonard B. Edel-man, testifying for Morgan, stated that plaintiff was not a satisfactory tenant, that he was late with 'his rental payments and that he voluntarily signed a cancellation of the lease. Edelman also stated that he himself contacted the defendant and negotiated the new lease with him.
The matter is complicated further by the fact that Morgan actually gave Michael the sum of $175, which Morgan sought to explain as being in the nature of a donation in order to help plaintiff pay his bills. Also, plaintiff contends that the defendant’s answer shows an admission of the fact that 'he had agreed to pay for all the gravel. This we find to be erroneous, however, as the answer only admits of a promise to pay for gravel to the extent of $175, which, as pointed out above, was actually done.
This case, like so many others, presents for determination a factual question which can be determined only on the testimony of the various witnesses. Although there are some facts and circumstances surrounding the matter, they are not decisive, even when taken into consideration together with the testimony. The trial judge saw and heard the witnesses and a careful review of the record has shown us no manifest error in his findings.
Finding no such manifest error in the judgment appealed from, the same is hereby affirmed.
Judgment affirmed.