SHORTESS, Judge.
Perkins College Partnership in Commen-dam (defendant) appeals from an adverse judgment ordering it to specifically perform its contractual obligation. The judgment requires defendant to convey its “leasehold interest” in Perkins College Shopping Center to William A. Ball (plaintiff).
Shortly after a serious fire caused extensive damage to its shopping center, defendant on February 5, 1987, entered into an agreement whereby plaintiff received an option to purchase all rights, title, and interest defendant owned in the above-mentioned shopping center. Specifically, the agreement provides as follows:
Perkins College Partnership in Com-mendam, hereinafter referred to as VENDOR, represented herein by Theo. F. Cangelosi[,] Agent, by virtue of a Power of Attorney, a copy of which is on file in the office of the Clerk of Court, an Ex-Officio for the aforesaid Parish and State.
William A. Ball, married to and living with Cristina Meneses Ball, residents of legal age of the Parish of East Baton Rouge, Louisiana, and the said Mrs. Cristina Meneses Ball represented herein by her husband, by the virtue of a Power of Attorney, a copy of which is on file in the office of the Clerk of Court, an Ex-Officio Recorder for the aforesaid Parish and State, herein referred to as VENDEES.
WITNESSETH:
For and in consideration in (sic) the sum of one thousand dollars ($1,000) herewith paid in cash VENDOR does hereby sell, assign, and convey unto VENDEES an option to buy for a period of ninety (90) days from date hereof all rights, title, and interest VENDOR owns in[1] the Perkins College Shopping Center located at the corner of College Drive and Perkins Road in the City of Baton Rouge, Louisiana. The land upon which the buildings located in the shopping center are built is leased by VENDOR from HAL S. PHILLIPS for a term ending April, 2025. The purchase price will be one million one hundred sixty thousand dollars ($1,160,000). For the sum of one million dollars ($1,000,000) thereof VENDEES will assume the entire prom *1120 issory note VENDOR owes to First Federal Savings and Loan of Alexandria, Louisiana, a copy of which note is attached hereto and made a part hereof. On the date of sale the Partnership, Mrs. Peggy Gore Spacie, Guy Gore Cangelosi, Dale Douglas Cangelosi, and Gary Stephen Cangelosi will be released from all liability on and under the promissory note above described. At that time the proceeds from the fire insurance which has not been disbursed to the architect or the contractor remodeling the building, and a pro rata share of the rental insurance will be assigned to the VENDEES. The proceeds from the fire damage will be used in repairing and improving the damaged building according to plans and specifications approved by the VENDOR. If the insurance company insuring the premises to be conveyed insists that work proceed on the damaged building, the work will proceed during the option period according to plans and specifications approved by VENDOR, VENDEES, and the insurance company. If VENDEES do not provide VENDOR with plans approved by VENDOR within two (2) weeks of the date hereof VENDOR shall have the right to proceed with the repairs and improvements in accordance with plans and specifications prepared by it and approved by the insurance company.
VENDEES may extend this option for a period of forty-five (45) additional days provided VENDEES give VENDOR written notice of its intention to do so together with a check payable to VENDOR in the amount of five thousand dollars ($5,000). If the option is not exercised VENDEES will give VENDOR an assignment of all leases negotiated by VENDEES for space in the shopping center plus notice in writting (sic) of all leads known by VENDEES for possible tenants in the shopping center.
This contract and agreement is subject to the written approval of the said First Federal Savings and Loan Association of Alexandria, Louisiana, as is the release of the lease to Ernest R. Perry, Sr. of a portion of the said shopping center.
Plaintiff experienced difficulties obtaining financing for the project. This led to his exercising the extension clause provided in the contract. On June 9, the parties again extended the agreement. This time in a separate document the parties agreed as follows:
At the time of the closing of the sale to William A. Ball, in addition to the $1,1600,00 (sic), he will pay $5,000 for each month of the six month period for which the option has been extended from June 19, 1987. The following leases are hereby assigned to Perkins-College Partnership in Commendum (sic):
Auto Shack Sherwin Williams Rex Radio and Television Welsh Cleaners
as well as any other leases acquired by him affecting any of the property in the shopping strip. The effective date of the assignment will be the date of the failure of William A. Ball to purchase the property.
These leases may be used as additional security by the Partnership to borrow the additional $160,000 plus the money paid each month for the option extensions from First Federal Savings & Loan of Alexandria. This amount may be borrowed by the Partnership to be used in the manner stated until, during the time granted, Mr. Ball borrows the funds to pay First Federal Savings & Loan the full amount owed to it by the Partnership.
On December 11, 1987-, plaintiff notified defendant by letter of his intent to exercise his option to purchase the property and that closing would take place on December 18, 1987, at the office of Bobby L. Forrest, his attorney. Forrest, however, informed defendant, by certified letter delivered on December 18, 1987, he had not completed a title examination and advised defendant’s attorney that closing would take place at any time on or after January 7, 1988. Apparently, Forrest believed a clause from an earlier offer to sublet, which defendant rejected and which had provided twenty days from the exercise of the option to complete *1121 the closing, had been carried over into the final form of the contract. Notwithstanding Forrest’s letter, Theo Cangelosi, general partner of the partnership, and William Hodgkins, the partnership’s legal counsel, appeared at Forrest’s office on December 18, 1987, ready to complete the sale. They also hand delivered a letter to Forrest, which stated no extension of time to close would be granted.
The closing never took place, and both plaintiff and defendant sought relief through the courts. On March 10, 1988, plaintiff filed suit alleging the monies given to defendant constituted “earnest money” entitling him to the return of the double. In the alternative, plaintiff alleged that compensation was due for the effort he expended leasing spaces in the shopping center under a theory of unjust enrichment. Defendant answered the suit asserting that plaintiff failed to exercise his option timely, and was therefore barred from recovery. Defendant also reconvened demanding $214,268.97 in damages, $30,000 consideration for the last six-month extension of the agreement, and $184,263.97 for plaintiff’s failure to comply with an oral agreement to pay all costs of the operation of the shopping center including the uninsured cost of reconstruction and renovation necessitated by the fire.
The trial court’s oral reasons for judgment contain numerous findings of fact and law. First, it ruled that the agreement was an option contract and denied plaintiff’s request for return of the double. Second, the court found plaintiff had timely exercised his option, and at that point the option ripened into a contract to sell immovable property. Third, since the agreement was silent with respect to a closing date, it stated that the twenty-day period until January 7, 1988, suggested by Forrest for closing was reasonable under the circumstances. Finally, the court gave plaintiff an additional 120 days to perform because defendant failed to serve plaintiff with a notice to perform; and it ordered specific performance on the part of the defendant, if plaintiff could secure the necessary financing within the additional time period.
Defendant contends on appeal that the phrase “... convey unto VENDEES an option to buy for a period of ninety (90) days from the date hereof all rights, title, and interest VENDOR owns in the Perkins College Shopping Center ...” should be interpreted to mean that plaintiff had to close within that period. A similar argument was made in Bankston v. Estate of Bankston, 401 So.2d 436 (La.App. 1st Cir.), writs denied, 406 So.2d 627 (La.1981) where the defendants argued that the act of sale must be passed within the 24-month lease term when the agreement states: “As further consideration of the monthly rental, Lessor agrees to grant to Lessees the option to purchase the above described property and movables for $68,950.00_ Lessees may exercise the option any time within the twenty-four (24) month peri-od_” This court interpreted the contract to only require acceptance of the offer within the option period. We cannot conclude the trial court was clearly wrong in this finding.
As stated above, the trial court found the period between December 18, 1987, and January 7, 1988, provided a reasonable amount of time to bring the sale to a close. Although plaintiff did not attempt to reschedule another closing after December 18, 1987, the trial court held it would have been a vain and useless act in light of the actions of the defendant. The letter delivered by defendant to Forrest on December 18,1987, states that defendant “... does not acquiese (sic) in or agree to any extension of the said closing beyond the date and time scheduled and required by the said agreement.” At trial, Cangelosi stated that his attorney agreed to extend the closing period to January 7, 1988. His position is supported by a demand letter dated January 8, 1988, wherein defendant stated “[sjince you have failed to proceed with the closing of the sale in accordance with the agreement and the closing scheduled on your behalf by your attorney, you are hereby formally notified that your option to purchase the referenced property has expired.” In contrast, plaintiff testi *1122 fied that defendant never agreed to the January 7, 1988, extension. In Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court stated that where the fact finder’s finding is based on its decision to credit the testimony of one witness over another that finding can virtually never be manifestly erroneous. The trial court’s ruling is based on a credibility determination. Under the circumstances presented in this case, we are unable to say that the trial court was clearly wrong.
The trial court under LSA-C.C. arts. 2013 and 2015 granted plaintiff an additional 120 days to close because defendant failed to serve plaintiff with notice to perform within a reasonable time period. The trial court[2] also granted plaintiff specific performance so that plaintiff could secure the necessary financing within the additional time period. However, the economic factors of the case, among others, suggest that specific performance may have been improvidently ordered.
Prior to the parties entering into the option agreement, a fire had extensively damaged the shopping center. Major renovations took place during the option period and apparently continued well into 1988. The record shows that at the time the parties entered into the initial agreement they believed that the insurance proceeds would cover the cost of renovation. But, the actual cost of repair greatly exceeded the amount of insurance coverage. From November 7, 1987, through May 9, 1988, defendant paid at least $139,686.35 for renovations to the shopping center over and above the insurance coverage. Moreover, defendant continues to pay mortgage notes on the property, all of which benefit plaintiff if the purchase is ever finalized. The record also reflects that it is possible defendant will suffer financially in other ways from any extension of time granted to plaintiff, such as the payment of taxes, insurance, etc.
In contrast, plaintiff's costs consist of $6,000.00 paid to defendant to purchase the option period, three or four months’ rental paid to the landowner, and some labor and expenses in securing four leases for the shopping center Plaintiff’s costs total approximately $28,046.40.
Plaintiff testified that he had received an oral commitment from Pelican Homestead and Savings Association approving his assumption of the loan prior to December 11, 1987. However, we find it noteworthy that plaintiff did not receive written confirmation from Pelican until February 8, 1988, and that the confirmation contained numerous conditions which had to be met before final approval of the loan could be made. One of these conditions was the personal guarantee of a joint-venture partner brought in by plaintiff to help obtain financing. On March 4, 1988, six days before plaintiff filed suit seeking only monetary damages, Pelican notified plaintiff that his loan was denied because he failed to accept the Assumption Agreement within a set time. The record is silent with regard to plaintiff’s current ability to obtain new financing.
The Louisiana Supreme Court in J. Weingarten, Inc. v. Northgate Mall, Inc., 404 So.2d 896, 901 (La.1981), stated that specific performance should not be granted “when it is impossible, greatly disproportionate in cost to the actual damage caused, no longer in the creditor’s interest, or of substantial negative effect upon the interest of third parties.” In light of the Louisiana Supreme Court’s language, we remand the case for an evidentiary hearing to determine whether the four-month extension of time to close and the grant of specific performance was appropriate under the *1123 facts as developed and to be developed using the Weingarten criteria as articulated above.
Defendant also contends that the trial court erred in finding that no oral agreement existed wherein plaintiff agreed to pay all costs of renovation which exceeded the insurance coverage and all day-today operation costs. The total amount of the contract in this case exceeds $500.00. Therefore, the existence of the contract must be proved by at least one credible witness and other corroborating evidence. LSA-C.C. art. 1846. Here, the trial court was called upon to make credibility determinations. These conclusions must be accepted unless manifestly erroneous. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977). A thorough review of the record reveals no manifest error committed by the trial court. Therefore, this assignment is without merit.
The trial court ruled the $30,000.00 payment for the final six-month extension of the option period was to be paid only if the sale was finalized. When the parties extended the option agreement for the final time, the extension provided that “At the closing of the sale ... [Ball] will pay $5,000 for each month of the six month period for which the option has been extended from June 19, 1987.” The agreement also called for plaintiff to immediately assign all leases he had obtained for the shopping center and to assign all subsequently obtained leases on the date plaintiff failed to purchase the property. The previous agreements called for the immediate payment of cash for the option period and the assignment of any leases obtained by the plaintiff at the time of the failure to exercise the option. On appeal, defendant argues that the logical extension of the trial court’s reasoning results in nullifying the six-month extension for lack of consideration. However, the agreement does provide minimal consideration. The terms of the final extension required plaintiff to immediately assign all leases he currently held and agree that these leases could be used by defendant as security for additional loans. Moreover, we note that when an option is purchased it turns an ordinarily revocable offer into an irrevocable offer for the term of the option. Even if the final extension was not supported by any consideration, the extension can be construed as a revocable offer to sell the property which was accepted by plaintiff before withdrawn by defendant. Triplett v. Ferina, 432 So.2d 1128 (La.App. 3d Cir.1983); and Goodyear Tire & Rubber Co. v. Ruiz, 367 So.2d 79 (La.App. 4th Cir.1979).
For all these reasons, this case is remanded to the trial court for an additional evidentiary hearing consistent with this opinion. Costs to await final disposition.
REMANDED WITH INSTRUCTIONS.

. Throughout the record defendant’s interest in the property is referred to as a leasehold interest. The formal requirements of an assignment of a leasehold interest is governed by LSA-C.C. art. 1821. This article does not require a writing to transfer this interest as between the parties. See also Michael v. Morgan, 61 So.2d 361 (La.App. 1st Cir.1952) (where this court assumed without deciding that an oral sale of a lease was possible). Here, the record shows defendant may have constructed the buildings that comprise the shopping center. Therefore, the transaction between plaintiff and defendant may have included more than an assignment of a simple leasehold interest. In 1979, the legislature enacted LSA-C.C. art. 493, which provides, in the absence of any other provision of law or juridical act, a building placed on the land of another with the consent of the landowner belongs to him who made it. The building is considered a separate immovable under LSA-C.C. art. 464. And, under LSA-C.C. art. 491, the ownership of the building can be asserted against third persons if separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish where the immovable is located. Unfortunately, the record before us does not provide us with answers to many questions we have concerning this case. We do not have the lease agreement between defendant and the landowner. We do not know the date defendant entered into this lease. Nor do we know the history of the construction of the buildings that comprise the shopping center. Without this information and without the benefit of argument by the attorneys, we must presume that the basic analysis of the trial court set forth later in the opinion is correct.

. As an aside, we note that under these Civil Code articles the obligor who failed to perform may be granted, in light of the circumstances, including, among other things, the good faith of the obligor, and whether he has a valid excuse for not performing, an additional time to perform. In justifying the extension of time to perform, the trial court stated that the failure of plaintiff to close on December 18, 1987, was the fault of Forrest and not the fault of plaintiff. In an action between Forrest and plaintiff, this analysis may be correct, depending on the facts. However, in a suit between the defendant and plaintiff, we see no reason why the fault of plaintiff and/or his agent should not be taken into account when deciding whether plaintiff should receive an additional time to perform.