520 So.2d 1053 (1987)
Jimmie HAIRFORD, et al., Plaintiffs-Appellees,
v.
John Henry PERKINS, Defendant-Appellant.
No. 86-1190.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
*1054 Michael J. Johnson, Marksville, for plaintiffs-appellees.
John L. Dardenne, Jr., Baton Rouge, and Darrel D. Ryland, Marksville, for defendant-appellant.
Before DOUCET and KING, JJ., and CULPEPPER, J. Pro Tem.[*]
KING, Judge.
The main issues presented by this appeal are whether the trial court abused its discretion in granting plaintiffs' petition for a preliminary injunction, whether a judge ad hoc was the proper judge to hear defendant's motion to recuse the trial judge, and whether the recusal motion should have been granted.
Jimmy and Wayne Hairford (hereinafter referred to as plaintiffs) filed a petition for injunctive relief and damages seeking to prohibit John Henry Perkins (hereinafter referred to as defendant) from threatening the plaintiffs or from carrying a concealed weapon. A hearing was fixed, in accordance with law, for October 3, 1986
The defendant filed a motion for recusation of Judge B.C. Bennett, Jr., to whom the case had been assigned for trial, and a request to transfer the hearing of the recusal motion to another division of the court. Judge Bennett denied defendant's request to transfer the hearing of the recusal motion to another division of the court and instead appointed a judge ad hoc to hear the recusal motion. On October 1, 1986, a judge ad hoc heard the motion to recuse and denied the motion. Defendant applied for supervisory writs from this decision to the Third Circuit, Louisiana Court of Appeal. Writs were denied on October 3, 1986. Hairford v. Perkins, an unreported decision bearing Number 86-985 on the Docket of the Third Circuit, Louisiana Court of Appeal.
A hearing on plaintiffs' petition for a preliminary injunction was then held on October 3, 1986 before Judge Bennett. After the hearing the preliminary injunction was granted in part, enjoining defendant from "harming, harassing, or threatening petitioners, Jimmie Hairford and Wayne Hairford." The trial court did not grant the other relief sought by plaintiff.
The defendant filed a timely devolutive appeal seeking a reversal of the decision on the motion to recuse and the granting of the preliminary injunction. We affirm in part, reverse in part, and render judgment.

FACTS
This litigation is the result of a dispute involving adjoining landowners in rural Avoyelles Parish, Louisiana. The defendant is a domiciliary of East Baton Rouge Parish, who purchased approximately 250 acres in Coonville in Avoyelles Parish in order to raise cattle. The defendant owns a house, which is located on his land adjacent to the plaintiffs' property, that he uses on the weekends when he visits his property. Defendant enjoyed a good relationship with the plaintiffs until October, 1983.
The defendant testified that he received a call in Baton Rouge from plaintiff, Wayne Hairford, informing him that there were three people hunting on his property and asking for defendant's permission to remove the hunters from the property. The defendant instructed Wayne Hairford not to do anything because one of the hunters was an employee and the other was a close friend. He also testified that Wayne *1055 Hairford's father, plaintiff, Jimmie Hairford, called soon thereafter, irritated because of the defendant's failure to allow the Hairfords to remove the hunters. He was told by defendant to stay on his own property and that the hunters would do likewise.
On September 30, 1985 the defendant filed a complaint with the Avoyelles Parish Health Department regarding the discharge of raw sewage onto his property from a trailer owned by the plaintiff, Wayne Hairford. As a result of this complaint, a State Health Inspector made an investigation on September 30, 1985. The inspector testified that, upon investigation, he noticed that a trailer owned by Wayne Hairford had a sewer line which was draining raw sewage 20 feet into the defendant's property. He advised Mr. Hairford that he was in violation of the State Sanitary Code and that he would need to "install a proper approved system" within fifteen days. After several extensions, the problem was finally corrected by March 26, 1986. As a result of the complaint to the Board of Health and the subsequent inspection, problems between the parties began to escalate.
One of the acts of harassment complained of by the plaintiffs allegedly occurred in October, 1985. The plaintiff, Jimmie Hairford, testified that the defendant, armed with a .22 caliber pistol, drove his threewheeler onto plaintiff, Wayne Hairford's property threatening that he would kill him if there was anymore trouble. When questioned by defendant's counsel, he admitted that although the defendant was in possession of a handgun, he never pulled the handgun. The defendant denied the incident ever occurred.
Another incident complained of by the plaintiffs occurred on November 15, 1985. Plaintiff, Wayne Hairford, testified that on that day, he and his brother-in-law drove past the defendant, who was on his tractor, when obscene gestures were made by the defendant in their direction. Later that day, he encountered the defendant again and asked him why the obscene gestures were made. The defendant allegedly replied that he would make trouble and wanted the plaintiff to move. The plaintiff told the defendant if he was not left alone, he "was gonna whip his butt."
The defendant gave an entirely different version of the incident. He testified that he was driving down a nearby highway toward his hay pasture when the plaintiff, Wayne Hairford, pulled out of a neighbor's driveway in front of his tractor. He stated that the plaintiff ordered him to get down from his tractor so he could beat him up. The plaintiff, Wayne Hairford, left after another car pulled up behind the tractor. Defendant further testified that he was frightened by this encounter and that as a result, he took a pistol out of his tool box, which he used to kill snakes while in the pasture, and put it in his pocket. After this incident, he filed simple assault charges against the plaintiff who was arrested on November 16, 1985 and taken to jail. After plaintiff, Wayne Hairford, posted bail and got out of jail, he filed similar charges against the defendant. Both charges were ultimately dismissed by a grand jury.
After this encounter, defendant decided to have his property surveyed in order to determine whether a fence he had constructed between the adjoining lands was on his property or on the land belonging to the plaintiffs. The fence was originally built by the defendant in the Spring of 1978. At that time, the plaintiff, Jimmie Hairford, had asked the defendant to build the fence several feet back from its proposed location in order to give his son, plaintiff, Wayne Hairford, more room to maneuver his trailer on and off his property. After the survey was completed, it showed that the defendant's fence was actually on property owned by plaintiff, Wayne Hairford.
At this point, the defendant testified that he attempted to call his attorney but was unable to reach him; as a result, he decided to visit a local judge for advice. He informed the judge that his fence was 11½ feet over on the Hairford property and asked what action should be taken. He testified that the judge advised him to return *1056 to his property and remove the fence. Based on this advice, the defendant returned to his property with several deputies and proceeded to cut and remove the barbed wire. The defendant also testified that the plaintiffs were present and were yelling he should be shot for trespassing. One of the deputies testified that he called the sheriff's office and was instructed to stop the removal of the fence until the attorneys for the parties could be contacted. At this point the defendant stopped cutting the fence and went back to work on his property. The plaintiffs complained that this was just another act designed to harass and intimidate them.
As a result of this incident, the plaintiffs filed criminal charges on January 16, 1986, claiming that the defendant was guilty of criminal trespass and criminal damage. The charges were dismissed after a criminal trial on the merits.
The plaintiffs also complained that the defendant attempted to harass them by taking pictures of their property on several occasions. Jenny Hairford, the wife of Wayne Hairford, testified that the defendant on two occasions, once in December, 1985 and once in March or April, 1986, took pictures of their house and property. She did admit that every time the defendant took pictures he was taking them while standing on his property. The defendant testified that the first set of pictures were taken to verify the raw sewage complaint and that the second set were taken to verify the problems with the fence.
On November 22, 1985, the defendant filed a suit for injunctive relief seeking to prevent the discharge of sewage on his property, and asking that plaintiff, Wayne Hairford, be enjoined from harassing and threatening him. On May 9, 1986, a stipulated judgment was entered in the suit "enjoining, prohibiting and restraining Wayne Hairford from harming, harassing or threatening John H. Perkins, Carolyn V. Perkins or any member of their family." The plaintiffs then filed this suit on September 17, 1986, asking the court to issue an injunction to prohibit the defendant from threatening them and to prevent the defendant from carrying concealed weapons. The trial judge signed an order on the same day ordering the defendant to show cause on October 3, 1986 why a preliminary injunction should not issue.
On September 30, 1986, the defendant filed a motion to recuse Judge Bennett based on the fact that, as a private attorney, the judge had represented the Hairfords and, according to several deputies present, had called the Avoyelles Parish jail to inquire about the bond set for plaintiff, Wayne Hairford, when he was arrested on November 16, 1985. On September 30, 1986, Judge Bennett denied the defendant's request to transfer the hearing on the motion to recuse to another division; instead he appointed the Honorable L.O. Fuselier, a District Judge of the Thirteenth Judicial District Court, from the adjoining Parish of Evangeline, to preside over the hearing on the motion to recuse.
Judge Fuselier heard and denied the recusal motion and this court then denied defendant's application for supervisory writs on October 3, 1986. The same day, Judge Bennett presided over the hearing on this suit for a preliminary injunction. Judgment was rendered on October 3, 1986 and signed on October 9, 1986, granting a preliminary injunction and enjoining defendant from "harming, harassing, or threatening petitioners, Jimmie Hairford and Wayne Hairford." The trial court did not grant an injunction prohibiting the defendant from carrying a concealed weapon.
Defendant filed a timely devolutive appeal on October 1, 1986 alleging as assignments of error that:
(1) The trial court committed manifest error in failing to reassign the case to the other sitting judge in the Twelfth Judicial District for the purpose of hearing the recusal motion;
(2) The trial judge ad hoc committed manifest error in failing to grant the motion to recuse; and
(3) The trial court committed an abuse of discretion in granting the preliminary injunction without a sufficient showing of irreparable injury.
*1057 We will discuss the first two assignments of error together as they both deal with the motion to recuse.

RECUSAL
The applicable article governing the recusation of judges is found in Louisiana Code of Civil Procedure Article 151 which states in pertinent part:
"A. A judge of any court, trial or appellate, may be recused when he:
* * * * * *
(2) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
* * * * * *
(6) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings."
The procedure for selection of a judge to try a motion to recuse is set out in La.C. C.P. Article 155 and 156 which state:
"In a district court having two or more judges, the judge who is sought to be recused shall have the motion to recuse referred to another judge of the court for trial, in accordance with the rules of the court." La.C.C.P. Art. 155.
"The judge of a district court having a single judge shall appoint a district judge of an adjoining district to try the motion to recuse.
The order of court appointing the judge ad hoc shall be entered on its minutes, and a certified copy of the order shall be sent to the judge ad hoc." La.C. C.P. Art. 156.
The Twelfth Judicial District Court is a district court having more than one judge and the issue of whether the trial court erred in appointing a judge ad hoc of an adjoining district to hear the defendant's motion to recuse, rather than to the other Judge of the Twelfth Judicial District Court, was previously before this court on a supervisory writ filed by the defendant on October 2, 1986.
When plaintiffs' petition for a preliminary injunction and damages was filed on September 17, 1986 it was assigned, in accordance with law, a date of October 13, 1986 for hearing. When defendant filed his motion to recuse, on September 30, 1986, there was only three days remaining before the scheduled hearing on the preliminary injunction. At that time the Honorable Judge Harold J. Brouillette, the other District Judge of the Twelfth Judicial District Court, was not in the Twelfth Judicial District as he was out of state attending a National Judicial College seminar. For this reason, Judge Bennett appointed the Honorable L.O. Fuselier, District Judge of the Thirteenth Judicial District Court, an adjoining judicial district, to try the motion to recuse prior to the scheduled hearing date for the preliminary injunction since Judge Brouillette was not scheduled to return to the state prior to October 3, 1986.
In denying the writ we stated:
"WRIT DENIED: The second judge having temporarily absented himself from the district, the court was not in error in appointing a judge of the adjoining district to hear the Motion to Recuse..."
For the same reason given in our denial of defendant's application for supervisory writs, we find this assignment of error is without merit.
In his second assignment of error, the defendant contends the trial judge ad hoc committed manifest error by failing to grant the motion to recuse. He claims that Judge Bennett should have been recused because he was friends with, and had in the past, represented the Hairfords. Defendant alleged in his Motion for Recusal that after plaintiff, Wayne Hairford's arrest for simple assault on November 17, 1985, it was related to him by several deputies present during his booking that attorney, B.C. Bennett, now the Honorable B.C. Bennett, Jr., District Judge of the Twelfth Judicial District, called to find out the amount of plaintiff, Wayne Hairford's, bail. Based on this information, the defendant argues that Judge Bennett should be recused because *1058 he has been employed or consulted as an attorney in the cause and, due to his past association with the plaintiffs, he has an interest in the cause.
The law to be applied on motions for recusal was summarized by this court in Wm. T. Burton Industries, Inc. v. Busby, 348 So.2d 1328 (La.App. 3 Cir.1977), where we stated that:
"The burden of proof rests on plaintiff in the instant suit to establish facts and circumstances which will justify a conclusion, or at least an inference, that the trial judge is interested in the cause. The law does not prescribe a test which should be applied in determining whether the trial judge has such an interest. Each case must be examined on its own facts, therefore, to determine whether there should be a recusation. State, Department of Highways v. McDonald, 329 So.2d 898 (La.App. 2 Cir.1976)." Wm. T. Burton Industries, Inc. v. Busby, 348 So.2d 1328, at page 1330 (La.App. 3 Cir. 1977).
After reviewing the evidence and testimony, we find that this assignment of error is without merit. Although there was testimony given by the dispatcher who was on duty at the Avoyelles Parish Sheriff's office on November 17, 1985, to the effect that a man did call and said he was Clyde Bennett, there was no direct proof or evidence submitted from which we can infer that Judge Bennett was indeed employed or consulted as an attorney in the cause.
Judge Bennett testified on the hearing of the motion to recuse that he did not remember making such a call and that, even if he had called, it would have simply been an attempt to obtain information as a favor for the plaintiffs. In addition, he stated he was aware that the plaintiff, Jimmie Hairford, was having a boundary dispute with the defendant, but that neither he nor his previous law firm or its members had been retained or consulted by any of the parties in this cause while he was associated with the firm.
In the Burton Industries case, supra, the defendant made an oral motion in open court that the trial judge recuse himself because of the judge's prior involvement in other matters with Burton Industries and to avoid any appearance of bias. After a review of the evidence, we held that even though the trial judge, while in private practice before assuming his judicial office, handled a similar but entirely separate case on behalf of one of the parties, this did not make the judge "interested in the cause." Id., at page 1331. After a thorough review of the record, we have determined the evidence does not justify a conclusion or inference that Judge Bennett was employed or consulted as an attorney or biased, prejudiced, or interested in the cause; therefore, we hold that the trial judge ad hoc did not commit manifest error by failing to grant the defendant's motion to recuse Judge Bennett from hearing the suit for a preliminary injunction.

PRELIMINARY INJUNCTION
In his third allegation of error defendant contends that the trial court committed an abuse of discretion in granting the preliminary injunction requested by the plaintiffs. In his oral reasons for judgment, the trial judge summarized his reasons for issuing the preliminary injunction as follows:
"There have been threats on both sides. I think that threats made by Mr. Perkins rose out of fear, panic, but they were threats nevertheless. Mr. Hairford waited a long time to file this, and this is certainly not in his favor. However the Court understands from the evidence and sees that threats and disputes are ongoing.... Mr. Perkins properly went to Court to seek an Injunction against Wayne Hairford and he got an injunction. I think that Wayne Hairford has now, and Jimmie Hairford have now gone to Court to seek an Injunction against Perkins, and I think it's only fair that there be Injunctions against both parties in that neighborhood. It's for that reason the Court will grant the injunction as prayed for, and that's the Harrassment [sic]. I can not grant an Injunction against carrying a concealed *1059 weapon because I think that's uninforceable [sic]."
As a general rule, the trial court is vested with much discretion in determining whether to grant or refuse a preliminary injunction, but this discretion is not without limits. If the discretion was erroneously exercised, the trial judge's determination will be subject to review on appeal. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La.1979); Posey v. Smith, 453 So.2d 1016 (La.App. 3 Cir.1984).
La.C.C.P. Article 3601 provides in pertinent part:
"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; ..."
In Huber Oil Co. of Louisiana v. Save-Time, 422 So.2d 597 (La.App. 3 Cir.1982), we summarized under what circumstances the jurisprudence has upheld the issuance of a preliminary injunction:
"In order to avail oneself of the remedy provided by this article, one must be without an adequate remedy at law. The plaintiff must show that irreparable injury, loss or damage will ensue if an injunction is not granted. Therefore, the party seeking an injunction under LSAC. C.P. article 3601 must show that the loss alleged cannot be adequately compensated in money, or that it is a loss for which damages are not susceptible of being measured by pecuniary standards. LeBlanc v. Lyons, 401 So.2d 626 (La.App. 3rd Cir.1981).
The jurisprudence has recognized that the sole purpose of a preliminary injunction is to preserve the status quo pending a full trial on the merits. A preliminary injunction may be granted only upon a prima facie showing that the plaintiff is entitled to such judgment, i.e., that irreparable injury will result at the hands of the defendants if the plaintiff's prayer is denied. See Southwest Sale & Manufacturing Company, Inc. v. Delta Express, Inc., 342 So.2d 281 (La.App. 3rd Cir.1977), writ refused 345 So.2d 48 (La. 1977)." Huber Oil Co. of Louisiana v. Save-Time, 422 So.2d 597, at pages 599, 600 (La.App. 3 Cir.1982).
In the instant case, we find that after reviewing the record that the plaintiffs failed to establish that defendant's action posed a real or immediate threat of irreparable harm warranting the issuance of a preliminary injunction. The alleged acts precipitating the petition for injunctive relief all occurred at least seven months prior to the filing of this lawsuit. The trial judge himself noted in granting the preliminary injunction that the Hairfords had waited a long time to file this action and that this was not in their favor. This shows that the trial judge was well aware of the lack of urgency in plaintiffs' action. The jurisprudence is quite clear that the purpose of an injunction is not to afford a remedy for what has happened in the past, but to prevent the occurrence of actions in the future which are unlawful or injurious and pose irreparable injury. It is not sufficient for the plaintiffs to simply show that unlawful acts were committed in the past or that they fear these acts will be committed again. Acadian Heritage Realty v. City of Lafayette, 451 So.2d 17 (La.App. 3 Cir.1984), writ den., 452 So.2d 696 (La. 1984); Louisiana Livestock Sanitary Board v. Prather, 301 So.2d 688 (La.App. 3 Cir.1974). The plaintiffs did not present any evidence nor did they allege that there was any real threat of immediate or future unlawful acts of a nature sufficient to establish a cause of action for relief by an injunction. The plaintiffs have also failed in their burden of showing that there is no alternative remedy available or that any damages which they incurred could not be adequately compensated in money.
Generally, an injunction will not issue to restrain torts such as defamation or harassment. Courts have recognized that there is usually an adequate remedy at law which may be pursued in seeking redress from harassment and defamation. Greenburg v. DeSalvo, 254 La. 1019, 229 So.2d 83 (1969), cert. den., 397 U.S. 1075, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1969). The plaintiffs, in their petition, claim money damages in compensation for unauthorized use of property, *1060 emotional pain and suffering, and breach of contract. This indicates that plaintiffs think their damages are clearly susceptible of pecuniary measurement. The plaintiffs still possess the right to obtain money damages, after a trial on the merits, if they can provide sufficient evidence to prove damages were actually incurred. In addition to damages, the remedy of a permanent injunction is also available after a trial on the merits.
After reviewing the record, we find that the trial court abused its discretion in granting a preliminary injunction, based on the testimony and evidence submitted at trial, since no proof of irreparable injury was shown. For this reason, the trial court's judgment granting the preliminary injunction is reversed.
For these reasons, the judgment of the trial court is affirmed in part and reversed in part with all costs of this appeal to be divided equally between the plaintiffs and the defendant.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.