732 So.2d 699 (1999)
JIM WALTER HOMES, INC., Plaintiff-Appellant,
v.
Sherry Lynn JESSEN, aka Sherry Lynn Martin, as Tutrix of the Minor Children, Lauren Aline Storm and Jordan Scott Storm, Defendants-Appellees.
No. 98-1685.
Court of Appeal of Louisiana, Third Circuit.
March 31, 1999.
*700 Robert Waller Tillery, Hammond, for Jim Walter Homes, Inc.
John Haas Weinstein, Opelousas, for Sherry Lynn Jessen et al.
BEFORE: THIBODEAUX, PETERS, and PICKETT, Judges.
THIBODEAUX, Judge.
The plaintiff, Jim Walter Homes, Inc., appeals from a judgment denying it a preliminary injunction to enjoin Sherry Lynn Jessen, in her capacity as tutrix, from selling a house built under contract between Jim Walter Homes and Jessen, individually, and Jessen's former husband. The house is situated on land owned by Jessen's children from a previous marriage, and Jessen has no ownership interest in the land. Jessen's financial obligation to Jim Walter Homes, Inc., was discharged in bankruptcy as an unsecured debt. In this suit seeking a money judgment, we find that the plaintiff has made no showing of irreparable harm or that it is likely to prevail on the merits of an unjust enrichment claim. Accordingly, we must affirm the trial court's denial of the *701 preliminary injunction sought by Jim Walter Homes, Inc.

I.

ISSUES
We must decide:
1) whether the plaintiff must and did make a showing of irreparable harm; and
2) whether the plaintiff made a showing that it is likely to prevail on the merits of its claim of enrichment without cause.

II.

FACTS
Sherry Lynn Storm Martin Jessen (Sherry) was married to Billy Joe Storm prior to his death in September 1989. Before his marriage to Sherry, Mr. Storm purchased a small piece of land valued at approximately $3,000.00 on Johnson Bayou in Cameron Parish, Louisiana. This separate property of the deceased, Mr. Storm, went into the possession of the couple's minor children, Lauren Aline Storm and Jordan Scott Storm, in January of 1994. Sherry had, by that time, married Jonathan Martin, and together in January 1994, they signed a building contract, promissory note and an act of mortgage with Jim Walter Homes, Inc. ("Jim Walter" or "Jim Walter Homes") to construct a house on the children's land.
Sherry is the biological mother and natural tutrix of the Storm children, ages six and eight, and she was subsequently confirmed in that tutorship. She signed the Jim Walter documents in her capacity as an individual. Sherry testified that she made it clear to Jim Walter Homes that she did not own the land, and that the company's representative in Beaumont told her that the mortgage would be on the house only. However, the act of mortgage incorporates a description of the parcel of land owned by the Storm children. At trial, a different representative of Jim Walter Homes testified that borrowers are required to own the lot upon which the Jim Walter house is built.
Notwithstanding, Jim Walter built the house. The amount financed was $66,575.00. Sherry and Jonathan Martin paid approximately $15,000.00 in notes on the loan through July of 1996 but became insolvent and filed separate bankruptcy petitions under Chapter Seven in January 1997. At some point they were divorced. The bankruptcy petition of Jonathan Martin indicated that the obligation to Jim Walter was a secured debt, and that he intended to surrender the house. The petition of Sherry Storm Martin listed the obligation to Jim Walter Homes as an unsecured debt, and it was discharged in her bankruptcy proceedings. The record does not contain any explanation regarding the listing of the Jim Walter debt as a secured obligation on Jonathan's petition, and as an unsecured obligation on Sherry's petition for bankruptcy. Nor does the record reflect that any issue was made of this discrepancy or that any complaint was lodged in the bankruptcy court regarding the discharge of the debt in Sherry Martin's bankruptcy.
During the delinquency of the loan payments prior to the filings of bankruptcy petitions, Jim Walter Homes apparently did not attempt to foreclose upon, attach or sequester the property, or to file a materialman's lien or otherwise get a judgment against the Martins for non payment of the loan. The record does not contain any information explaining Jim Walter Homes' apparent failure to act, that is, whether it was related to problems with the act of mortgage, which described land that did not belong to Sherry and Jonathan Martin, or whether Jim Walter simply did not act upon the delinquency. Likewise, the record does not contain any information regarding whether the mortgage was ever recorded in Cameron Parish. This court can only infer that the bankruptcy court found the mortgage completely *702 invalid or unrecorded and accepted the debt classification as unsecured.
Approximately one month after the debt was discharged in bankruptcy, and approximately thirteen months after the Martins stopped paying the notes, Jim Walter Homes filed a petition against the Storm children and their mother as tutrix (now Sherry Jessen), for compensation because of enrichment without cause. Sherry has remarried, and the record reflects that the house has been vacant for over two years. Attempts have been made by Sherry Jessen to sell the house. Jim Walter Homes is now seeking a preliminary injunction against the defendants to enjoin them from selling the house until a trial on the merits can resolve the enrichment claim. The trial court denied the injunction, and this appeal was lodged. For the following reasons, we affirm the trial court's denial of the preliminary injunction.

III.

LAW AND DISCUSSION

Standard of Review
Our Supreme Court has recently reiterated the standard of review on appeal in Syrie v. Schilhab, 96-1027, p. 4 (La.5/20/97); 693 So.2d 1173, 1176 (citations omitted) as follows:
A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." This court has announced a two-part test for the reversal of the factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong but whether the factfinder's conclusion was a reasonable one.... The reviewing court must always keep in mind that if the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.
In the present case, Jim Walter Homes urges that another standard of review is applicable in this case wherein its assignments of error assert that the trial court made reversible errors of law. Appellate review of a question of law is simply a decision as to whether the lower court's decision is legally correct or incorrect. Ducote v. City of Alexandria, 95-1269 (La.App. 3 Cir. 7/17/96); 677 So.2d 1118. If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983). In fact, when an appellate court finds that a reversible error of law or manifest error of material fact was made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840 (La.1989); Lasha v. Olin Corp., 625 So.2d 1002 (La.1993).

Assignments of Error
Jim Walter Homes, Inc. contends that:
1) The lower court committed reversible error when it held that the plaintiff-appellant's case was a suit for money damages and the motion for preliminary injunction was denied because irreparable injury was not shown.
2) The lower court committed reversible error when it held that the plaintiff-appellant had other remedies available other than the Article 2298 remedy and therefore was unlikely to prevail on the main demand.

Irreparable Harm
Louisiana Code of Civil Procedure Article 3601 provides in pertinent *703 part that, "An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law." It is clear from the Code that, absent specific authorization by law, an injunction will not issue without a showing of irreparable injury. West v. Town of Winnsboro, 252 La. 605, 211 So.2d 665 (1967). Our jurisprudence further provides that the prima facie right to a permanent injunction must be proved before a preliminary injunction may issue. Equitable Petroleum Corp. v. Central Transmission, Inc., 431 So.2d 1084 (La.App. 2 Cir. 1983).
The jurisprudence interpreting La. Code Civ.P. art. 3601 holds that, while the trial court has broad discretion in deciding whether to grant injunctive relief, injunction is an extraordinary remedy and should only issue where the party seeking it is threatened with irreparable loss without adequate remedy at law. Dupre v. Schering-Plough Health Care Products, Inc., 95-213 (La.App. 3 Cir. 5/31/95); 656 So.2d 786; Greenberg v. DeSalvo, 254 La. 1019, 229 So.2d 83 (1969), cert. denied, Greenberg v. Dunker, 397 U.S. 1075, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970). Hence, in the present case, Jim Walter Homes must show irreparable injury, loss, or damage before the court can order a preliminary injunction to enjoin Sherry Jessen from selling the house at issue.
For purposes of granting an injunction, irreparable injury means that there is no adequate remedy at law, and the loss alleged cannot be adequately compensated in money, or is not susceptible of being measured by pecuniary standards. Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La.1981), cert. denied, Matherne v. Terrebonne Parish Police Jury, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). See also Hairford v. Perkins, 520 So.2d 1053 (La.App. 3 Cir. 1987). In the present case, a money judgment is being sought, and the injunction being requested is therefore not one to enjoin conduct which will result in damages insusceptible of being measured by pecuniary standards. In Hairford, we found that the plaintiffs' petition for money damages in compensation for unauthorized use of property, emotional pain and suffering, and breach of contract indicated that they believed that their damages were clearly susceptible of pecuniary measurement.
Similarly, in the present case, where Jim Walter Homes seeks money damages in compensation for enrichment without cause, there simply is no showing of irreparable harm. Nor is there a showing that no remedy was provided at law for the damages suffered by Jim Walter Homes. Jim Walter Homes had a building contract, a promissory note, and a mortgage executed by Sherry and Jonathan Martin, evidencing an apparent secured interest by Jim Walter in the house. In his bankruptcy petition, Jonathan Martin listed the house as a secured debt and established his intent to surrender it. We are not apprised by the record of the events taking place in the bankruptcy court, or of any steps taken by Jim Walter Homes to seek its remedy there, or prior to bankruptcy during the delinquency of the loan. However, a security interest was taken, and Jim Walter at some point had remedies under the note, the mortgage and the building contract signed by Sherry and Jonathan Martin.
In Dupre, 656 So.2d 786, we reversed the trial court's granting of an injunction where irreparable harm was not shown. The injunction requested was an anti-suit injunction against a suit filed in another state. We found that Schering-Plough had an adequate remedy at law to avoid the cost of duplicative litigation under La. Code Civ.P. art. 532, which provides for a stay of proceedings in just such instances. We held that by not pursuing that remedy, and by making an appearance, Schering-Plough waived its rights.
*704 In the present case, La.Civ.Code arts. 464 and 491, and La.Code Civ.P. art. 3571 provided a remedy at law to Jim Walter Homes, even though it built a house on the land of another.
Article 464 provides:
Buildings and standing timber are separate immovables when they belong to a person other than the owner of the ground.
Article 491 provides:
Buildings, other constructions permanently attached to the ground, standing timber ... may belong to a person other than the owner of the ground. Nevertheless, they are presumed to belong to the owner of the ground unless separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located.

(Emphasis added.)
Hence, the ownership of the building can be asserted against third persons if separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish where the immovable is located. See Ball v. Perkins College Partnership in Commendam, 572 So.2d 1118 (La.App. 1 Cir.1990).
Additionally, La.Civ.Code art. 493 provides in pertinent part:
Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent.
When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition.
See also Kibbe v. Lege, 604 So.2d 1366 (La.App. 3 Cir.), writs denied, 606 So.2d 540 and 606 So.2d 541 (La.1992), where we determined that a house constructed by the defendant with the plaintiff's consent could be removed by the defendant subject to his obligation to restore the property to its former condition.
Moreover, La.Code Civ.P. art. 3571 provides in pertinent part:
When one claims the ownership or right to possession of property, or a mortgage, security interest, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action.
Based upon our reading of these codal provisions, Jonathan and Sherry Martin, subject to any properly obtained security interest, owned the house, which is a separate immovable, even though they did not own the Storm land upon which it was built. Given the contract, note, and mortgage signed by both Jonathan and Sherry Martin, and given the above Articles, Jim Walter Homes should have obtained a secured interest in the house and therefore had remedies available to it for having the house sequestered and removed. In fact, Sherry Martin spoke to someone who wanted to buy the house, which is built up on high pilings or piers, and move it off of the Storm land. Because Jim Walter seeks compensation in money and had remedies available to it, Jim Walter cannot show irreparable harm sufficient to obtain a preliminary injunction in this case.
Jim Walter Homes urges that an error of law was made by the trial court which did not apply the exceptions to the irreparable harm requirement carved out by Louisiana jurisprudence. Because we find the exceptions inapplicable, we find that no error of law was made by the trial court. More specifically, Jim Walter Homes cites Ciambotti v. Decatur-St. Louis, Lupin, Properties Ventures, 533 So.2d 1352 (La. App. 3 Cir.1988) and Franz v. Cormier, *705 579 So.2d 1201 (La.App. 5 Cir.1991) for the proposition that injunctive relief is proper if a judgment would be valueless because of the insolvency of the judgment debtor. However, those cases are inapplicable. Franz involved an injunction to prevent a woman from withdrawing funds from a certificate of deposit established in her name by a man using funds from his and his wife's community property. Ciambotti involved a restraining order to prevent a partnership from drawing funds from a letter of credit fraudulently obtained from an investor. The insolvency of those seeking to withdraw the funds led the courts to allow the extraordinary remedy of injunction.
In the present case however, Jim Walter has sued the children and their mother as tutrix, not Sherry Jessen individually. Hence, Jim Walter has not sued the judgment debtors. The children did not contract for the house. Moreover, they would not be presumed to own the house if it had or has been properly recorded as a separate immovable. Moreover, the house itself constitutes an attachable piece of real estate which could be encumbered with a lien or judgment and liquidated by Jim Walter pursuant to a valid security interest under the documentation executed by the Martins.
Jim Walter Homes urges a second exception to the requirement of showing irreparable harm when the injunction is sought against actions clearly contrary to expressed law under Galle v. Coile, 556 So.2d 957 (La.App. 3 Cir.1990). However, in Galle we refused to apply the exception, finding that the defendant's alleged activities of shouting profanities at plaintiffs and discharging firearms over the home of plaintiffs, were only arguably illegal, as opposed to clearly illegal. In the present case, we find the exception inapplicable because the injunction is sought against the Storm children whose actions are not clearly contrary to expressed law. In fact, the record is not clear that the Storm children are acting at all. Apparently, the buyer who was interested in the house was going to purchase it from Sherry Jessen individually and then remove it from the land of the Storm children.
Further, neither the briefs nor the record below provides the details of the bankruptcy proceedings or any recordation or other action by Jim Walter Homes. If no security interest was or is being recorded, rendering the house separate from the land, then it is an immovable belonging to the landowners, the Storm children. If Sherry Jessen is considering selling the house and land as tutrix, and therefore on behalf of the children, then those actions are not clearly contrary to law because the failure to record renders all of the property, including the house, the lawful property of the children. As stated, it is not clear that the defendants, the children, are trying to do anything. The judgment debtor, Sherry Jessen as an individual, does not appear to be a party to this suit. Therefore, the second exception does not apply, and Jim Walter Homes is required to show irreparable harm, which it has not done. There has been no error of law by the trial court in failing to apply the exceptions to the requirement to establish irreparable harm.

Prevailing on the Merits; Unjust Enrichment
In addition to a showing of irreparable injury, the party seeking the preliminary injunction must also make a prima facie showing the he will prevail on the merits of the suit. General Motors Acceptance Corp. v. Daniels, 377 So.2d 346 (La. 1979). Jim Walter Homes has sued the Storm children and their mother as tutrix under a theory of unjust enrichment pursuant to La.Civ.Code art. 2298 which provides in pertinent part as follows:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared *706 here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
Therefore, in order to prevail on the merits of a claim for enrichment without cause, Jim Walter Homes must show that (1) the Storm children have been enriched at the expense of Jim Walter Homes, and that (2) Jim Walter Homes had no other remedy at law except under the unjust enrichment article, La.Civ.Code art. 2298. Jim Walter has not made a clear showing of enrichment, and Jim Walter definitely was not without other remedies. As a threshold matter, as stated above, the Storm children, through their tutrix, Sherry Martin, consented to the construction of the house by Sherry and Jonathan Martin contracting with Jim Walter Homes. Hence, the Storm children own the land but may not own the house, which is a separate immovable under the statutes, if properly recorded as such. Therefore, it is not established that the defendants have been enriched by the construction, which Sherry Jessen is apparently trying to sell to any buyer who can move it to another location. Accordingly, the first prong of the enrichment action fails.
Jim Walter Homes also fails under the second prong of Article 2298, which requires that there be no other remedies available. As shown above, Jim Walter Homes had a contract with Sherry and Jonathan Martin, it took a security interest in the construction, which it should have recorded, and it could have taken a lien or foreclosed upon, or sequestered or attached the house, during the delinquency of the loan. Moreover, it could have filed a complaint with the bankruptcy court regarding the listing of the property as unsecured by Sherry Storm Martin Jessen. The record does not contain any evidence that these remedies were inapplicable, and it does not show that any remedies were attempted by Jim Walter Homes, Inc.
Other remedies were available to Jim Walter Homes. To find that Jim Walter Homes now has no other remedy and to provide it one under unjust enrichment would be tantamount to allowing any plaintiff who let his cause of action prescribe, or any plaintiff who knowingly wrote a bad contract, to recover under an enrichment theory. The law on unjust enrichment does not apply when there is a remedy available such as the contract described herein, and there has been no showing by Jim Walter Homes that it can prevail on an enrichment theory.

IV.

CONCLUSION
Unfortunately, the record before us does not provide us with answers to many of the questions we have concerning the security interest or its recordation by Jim Walter Homes, or what occurred in the bankruptcy proceedings. Without this information, we must presume that the basic analysis and application of law by the trial court is correct. For the above and foregoing reasons, we find that a showing of irreparable harm was necessary, and in this case inadequate, for the issuance of a preliminary injunction. This opinion is limited to the narrow questions presented on appeal, i.e., whether a showing of irreparable harm was necessary and, if so, adequate, and whether the plaintiff was likely to prevail on the merits of the enrichment claim so as to justify the issuance of a preliminary injunction. We make no comment on the merits of any other present or future claim that Jim Walter Homes may have against the house it constructed or against Sherry Jessen or Jonathan Martin for their actions. We recognize that the denial of a preliminary injunction does not conclude the proceedings, which may continue to trial on a permanent injunction. Consequently, we affirm the trial court's denial of the preliminary injunction and remand the matter for further proceedings. *707 All costs of this appeal are assessed to Jim Walter Homes, Inc.
AFFIRMED AND REMANDED.