STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-1013


GAYNELL FINNIE, INDIV., ET AL.

VERSUS

JERRY LEBLANC, ET AL.


**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 00-3973
HONORABLE ROBERT LANE WYATT, DISTRICT COURT JUDGE


**********
ULYSSES GENE THIBODEAUX
CHIEF JUDGE
**********


Court composed of Ulysses Gene Thibodeaux, C.J., Marc T. Amy, and Michael G. Sullivan, Judges.

AMENDED AND, AS AMENDED, AFFIRMED. MOTION TO SUPPLEMENT THE RECORD DENIED.


**Edward Joseph Walters, Jr.**
**Darrel James Papillion**
**Moore, Walters, Thompson, Hoover, Thomas, Papillion & Cullens**
**6513 Perkins Road**
**Baton Rouge, LA 70808**
**Telephone: (225) 766-1100**
**COUNSEL FOR:**
        **Plaintiff/Appellee - Gaynell Finnie**

**James Eugene Williams**
**Woodley, Williams, Boudreau, Norman, Brown & Doyle, L.L.C.**
**P. O. Box 3731**
**Lake Charles, LA 70602-3731**
**Telephone: (337) 433-6328**
**COUNSEL FOR:**
        **Defendant/Appellant - Lafayette Insurance Company**
**Kathleen Kay**

**Attorney at Law**
**P. O. Box 2042**
**Lake Charles, LA 70602-2042**
**Telephone: (337) 439-7616**
**COUNSEL FOR:**
   **Plaintiff/Appellee - Gaynell Finnie**

**Charles Munson Lanier, Jr.**
**John Kearney Nieset**
**Christovich & Kearney, LLP**
**Pan American Life Center**
**601 Poydras Street - Suite 2300**
**New Orleans, LA 70130**
**Telephone: (504) 561-5700**
**COUNSEL FOR:**
   **Defendant/Appellee - American Home Assurance, Inc.**

**Jerry LeBlanc**
**In Proper Person**
**241 West Sallier Street**
**Lake Charles, LA 70601**

THIBODEAUX, Chief Judge.

Plaintiff, Gaynell Finnie, brought suit against defendant, Jerry E. LeBlanc, alleging malpractice and sexual misconduct arising from their counseling relationship. Mr. LeBlanc, in turn, sued Ms. Finnie, alleging false allegations of sexual misconduct. As a result of Mr. LeBlanc's suit, Ms. Finnie amended her suit to allege claims of defamation and malicious prosecution. Before trial, Ms. Finnie settled her claim against Mr. LeBlanc, dismissed him with prejudice, and reserved the right to proceed against Mr. LeBlanc to the extent he was insured by Lafayette Insurance Company, his comprehensive general liability insurer. The jury returned a verdict against Mr. LeBlanc and awarded Ms. Finnie general and special damages.

Lafayette Insurance Company appeals the decision of the jury. Ms. Finnie answers the appeal and requests an increase in general damages. We affirm the judgment of the trial court rendered pursuant to the jury's verdict and increase the general damages award from $6,125.00 to $150,000.00.[1]

I.

**ISSUES**

1) Was the judgment against Jerry E. LeBlanc, to the extent he was insured by Lafayette Insurance Company, erroneous because Mr. LeBlanc was dismissed from the suit?

2) Was the jury award of special damages erroneous?

3) Should the trial court have allowed an interrogatory to the jury on whether LeBlanc was guilty of intentional conduct?

---

[1]This panel is aware that in *Finnie v. LeBlanc*, 03-457 (La.App. 3 Cir. 10/3/03), 856 So.2d 208, this court held that coverage did not exist under the LIC policy. However, a writ is currently pending before the Louisiana Supreme Court, *Finnie v. LeBlanc*, 03-3333. The writ has not been acted upon. Therefore, this matter is not final.

1

## FACTS

Gaynell Finnie was a patient of Jerry LeBlanc, a social worker. Ms. Finnie sought help from Mr. LeBlanc to deal with many issues, including her son's suicide.

Ms. Finnie began seeing Mr. LeBlanc in January of 2000. By February of 2000, they had entered into a sexual relationship. Ms. Finnie informed another counselor, Janice Bray Manuel, about the sexual relationship. Ms. Manuel confronted Mr. LeBlanc about Ms. Finnie's allegations, and Mr. LeBlanc denied the allegations. Ms. Manuel reported this information to the State of Louisiana Board of Social Worker Examiners.

Ms. Finnie sued Mr. LeBlanc on malpractice and sexual misconduct charges. Mr. LeBlanc continued to deny the allegations. In addition, Mr. LeBlanc and his wife, Kathy P. LeBlanc, filed suit against Ms. Finnie, alleging that she made false allegations of sexual misconduct, caused a false complaint to be filed against him, and falsely accused him of misdiagnosis of her condition. He also claimed that she converted his records to her own possession and altered these documents.

Ms. Finnie amended her petition to allege defamation and malicious prosecution and brought Lafayette Insurance Company (LIC), Mr. LeBlanc's comprehensive general liability insurer, into the suit. Mr. LeBlanc admitted that he lied regarding their sexual relationship after he was confronted with taped conversations wherein he admitted the sexual relationship. Mr. LeBlanc dismissed his lawsuit and plead guilty to false swearing.

LIC filed a motion for summary judgment and alleged an intentional act exclusion and an exclusion based on the rendition of professional services. The trial court granted summary judgment to LIC based on the professional services exclusion,

but the appeal time had not yet run by the time of trial. LIC intervened as a party-defendant because although it had been dismissed from the suit by summary judgment, it still wanted to protect its interests.

Prior to trial, Ms. Finnie entered into a settlement with Mr. LeBlanc and all of Mr. LeBlanc's other insurers, except LIC. The Joint Motion for Partial Dismissal dismissed Mr. LeBlanc with prejudice but reserved the right to proceed against him "to the extent that he was insured by Lafayette."

At trial, the only issues before the jury were Jerry LeBlanc's liability for defamation and malicious prosecution and the amount of Ms. Finnie's damages. The jury found that Mr. LeBlanc was liable to Ms. Finnie for defamation and malicious prosecution and awarded her special damages of $343,875.00 and general damages of $6,125.00. LIC appealed the jury verdict, and Ms. Finnie answered the appeal, seeking an increase in the general damages award.

Mr. LeBlanc was discharged in bankruptcy, but the bankruptcy court granted him the right to proceed to determine the liability of LIC.

III.

**LAW AND DISCUSSION**

***Standard of Review***

"Appellate review of a question of law is simply a decision as to whether the [trial] court's decision is legally correct or incorrect." *Jim Walter Homes, Inc. v. Jessen*, 98-1685, p. 5 (La.App. 3 Cir. 3/31/99), 732 So.2d 699, 702. "If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, its decision is not entitled to deference by the reviewing court." *Id.* (citing *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983)). When an appellate court finds that a reversible error of law was made in the trial court, it must

3

review the facts *de novo* and render a judgment on the merits. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993).

### Dismissal of Jerry LeBlanc

LIC argues that because Mr. LeBlanc was dismissed from the suit, his obligation to Ms. Finnie was extinguished. LIC further argues that because Mr. LeBlanc was no longer legally liable for a judgment rendered against him, neither could it be liable as Mr. LeBlanc's insurance carrier. LIC concludes that it should have been dismissed from the suit, or the trial court should have allowed it to present evidence to the jury regarding the terms of settlement to allow the jury to consider the extent that Mr. LeBlanc was insured by LIC.

On the other hand, Ms. Finnie argues that Mr. LeBlanc's release and reservation of rights was pursuant to *Gasquet v. Commercial Union*, 391 So.2d 466 (La.App. 4 Cir. 1980), *writ denied*, 396 So.2d 921 (La.1981), which held that a defendant may be released, and his rights may be reserved against an insurance company. The facts of *Gasquet* are distinguishable from the instant case and, thus, we will not rely on it. *Gasquet* involved an excess insurer, and the claimant in *Gasquet* could not go against the primary carrier, as in this case.

*Rollins v. Richardson*, 02-556 (La. 12/4/02), 833 So.2d 921 involved facts similar to this case. *Rollins* involved a plaintiff, Rollins, who entered into a settlement agreement with the defendants, the Richardsons. The parties executed an "Assignment of Rights and Subrogation Agreement" wherein, in consideration for being dismissed from the lawsuit, the defendants assigned to Rollins any claims or rights against Allstate Insurance Company, the Richardsons' insurance carrier. In addition, Rollins filed an amended petition naming Allstate as a defendant in the main demand. Thereafter, Rollins and the Richardsons filed a partial motion to dismiss.

4

The motion dismissed the Richardsons but expressly reserved rights against Allstate, as the insurer of the Richardsons.

On a motion for summary judgment, Allstate argued that there was no longer any coverage under the Richardsons' policy because the policy only covered damages that the Richardsons were legally obligated to pay. Allstate argued that its indemnification obligation was extinguished because the claims against the Richardsons had been dismissed with prejudice.

In *Rollins*, the appellate court affirmed the judgment of the district court granting summary judgment in favor of Allstate on the issue of coverage. The appellate court reasoned that "the compromise between the plaintiff and the Richardsons effected a complete extinguishment of the Richardsons' delictual obligations, thereby relieving Allstate of any liability under its policy." *Id*. at 924. However, the supreme court stated:

> As the court of appeal correctly recognized, the intent of the parties to the compromise is central to the resolution of this case. *Rollins v. Richardson*, 35,171 (La.App. 2 Cir. 12/7/01), 803 So.2d 1028, 1033 ("[W]e find that the intent of the parties to a settlement or compromise between a plaintiff and an insured tortfeasor must be examined to determine whether the tortfeasor's delictual obligation to which the insurance coverage applies has been released."). *See also, Futch v. Fidelity & Cas. Co. of New York*, 246 La. 688, 166 So.2d 274, 277 (1964).

*Id.* at 924-25. The supreme court declined to grant summary judgment, stating that the record revealed genuine issues of material fact relative to the intent of the parties.

In this case, Ms. Finnie reserved her claim against Mr. LeBlanc to the extent that he was insured by LIC. This was a partial dismissal, not a carte blanche release. The language in the partial dismissal, "to the extent he was insured by Lafayette" gave Ms. Finnie the right to proceed against LIC. LIC should not have been dismissed from the suit for the sole reason that Mr. LeBlanc was dismissed from

5

the suit. The intent was to grant a partial release of Mr. LeBlanc and to reserve rights to the extent that he was covered by LIC. We cannot say that trial court was legally incorrect in allowing the suit against LIC.

### *Special Damages*

LIC argues that the jury award of special damages was erroneous. It argues that the jury confused the damages associated with defamation and malicious prosecution with those arising from other causes of action which were settled before trial. In addition, LIC argues that the testimony of its experts, Dr. Vigen and Dr. Williams, indicated that the harm caused by defamation and malicious prosecution was minimal.

The jury awarded Ms. Finnie $343,875.00 in special damages. We will not disturb the jury's award of damages unless we find that the award constitutes an abuse of the jury's discretion. *See Eddy v. Litton*, 586 So.2d 670 (La.App. 2 Cir. 1991), *writ denied*, 590 So.2d 1203 (La.1992).

Jefferey Peterson, a licensed professional rehabilitation counselor, testified that Ms. Finnie's future costs would include a stay at a facility recommended by her doctors at approximately $66,156.00 for three months; neuropsychological testing at approximately $1,900.00 for 2 tests; one-on-one counseling at approximately $6,000.00; and medications costing approximately $5,200.00 per year. He also testified that Ms. Finnie was permanently disabled from teaching and would require vocational rehabilitation services ranging from $12,000.00 to $25,000.00 per year, at an average of $18,750.00 for three years. Additionally, Charles Bettinger, an economics expert, testified that her loss of income past and future would be approximately $880,665.00, and her costs for future medical and vocational rehabilitation would be approximately $393,487.00.

We find that the evidence was sufficient to support an award of past and future lost earnings and medical expenses. Thus, the jury did not abuse its discretion in awarding special damages.

### *General Damages*

Ms. Finnie argues that the jury's general damages award should be increased. The jury awarded Ms. Finnie general damages of $6,125.00, while awarding her special damages of $343,875.00.

The standard of review for an award for damages is set forth in *Wainwright v. Fontenot*, 00-492, p. 6 (La. 10/17/00), 774 So.2d 70, 74:

> [B]efore a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.
>
> *Coco v. Winston Indus., Inc.*, 341 So.2d 332, 334 (La.1977) (internal citations omitted).

We review the jury's award of $6,125.00 in general damages by asking whether the jury's determination that Ms. Finnie was entitled to a substantial award for medical expenses and loss of earnings, but to a low award for general damages, is so inconsistent that it renders the latter finding an abuse of discretion. Based on the facts in the record, we find the jury did abuse its discretion in awarding only $6,125.00 in general damages.

The jury's substantial special damage award is inconsistent with the finding that Ms. Finnie only suffered $6,125.00 in compensable pain and suffering associated with her claim for defamation and malicious prosecution. We, therefore, increase this amount to the lowest reasonable point, which we believe is $150,000.00.

7

Based on the testimony and the evidence, we find that Ms. Finnie experienced pain and suffering. Ms. Manuel, a treating psychotherapist, testified that Ms. Finnie was an exceptional teacher and very reputable in her community. She had an intact family and was a good mother. However, since the defamation and malicious prosecution incidents, she was unable to work and take care of her children. Ms. Manuel also testified that Ms. Finnie's spirituality had been confused and mauled. She became seriously depressed and became very suicidal.

Dr. Yadalam, Ms. Finnie's treating psychiatrist, testified that she has prominent symptoms several times a week. On any given week, these symptoms are severe enough that she is unable to function even in the simplest of jobs. Dr. Yadalam recommended that she receive treatment approximately six times per month for about two more years and then once every month for at least another year or two. Dr. Yadalam testified that Mr. LeBlanc's actions caused Ms. Finnie's treatment to increase in intensity and duration.

The substantial award of $295,000.00 for loss of earning suggests that the jury believed she was disabled. If one is disabled and is unable to pursue her chosen profession or to work in any profession, that degree of physical and mental distress past, present and future, would exceed $6,125.00. Therefore, we find that an award of $150,000.00 is the lowest point which is reasonably within the discretion afforded the trier of fact.

### *Denial of Interrogatory*

Finally, LIC argues that the trial court was in error in failing to present an interrogatory to the jury as to whether or not the conduct of Mr. LeBlanc was intentional. The claims before the jury were malicious prosecution and defamation.[2]

*Winn v. City of Alexandria,* 96-492, p. 5 (La.App. 3 Cir. 11/20/96), 685 So.2d 281, 284, sets forth the elements of a malicious prosecution claim:

> A civil action for malicious prosecution requires the concurrence of the following elements: (1) the commencement or continuance of a criminal proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original . . . proceeding; (3) its *bona fide* termination in favor of the present . . . plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damages.

The only element that would possibly necessitate inquiry into whether Mr. LeBlanc's conduct was intentional is the element of malice. "Malice can be inferred when the evidence shows that 'the claimant acted with absence of caution and inquiry that a person should employ before filing a suit.'" *Wiley v. Wiley*, 01-726, p. 5 (La.App. 3 Cir. 11/7/01), 800 So.2d 1106, 1110, *writ denied*, 01-3232 (La. 2/8/02), 809 So.2d 129 (quoting *Jones v. Soileau*, 448 So.2d 1268, 1272 (La.1984)). "Moreover, malice exists when there is 'knowledge that it is false or a reckless disregard for the truth.'" *Id.* (quoting *Aucoin v. Aetna Cas. & Sur. Co.*, 520 So.2d 795, 798 (La.App. 3 Cir. 1987)). Thus, an inquiry into whether Mr. LeBlanc's actions were intentional is not needed to satisfy the element of malice and is not needed to prove a claim of malicious prosecution.

"In order to prevail in a defamation action, a plaintiff must necessarily prove four elements: (1) a false and defamatory statement concerning another; (2) an

---

[2] The bankruptcy proceedings did not have an impact upon these proceedings because Louisiana's Direct Action Statute, La.R.S. 22:655, permits direct action against an insurer when an insured has been adjudicated bankrupt.

unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Fitzgerald v. Tucker*, 98-2313, p. 10 (La. 6/29/99), 737 So.2d 706,715. "Thus a plaintiff, in order to prevail in a defamation action, must prove 'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.'" *Trentecosta v. Beck*, 96-2388, p. 10 (La. 10/21/97), 703 So.2d 552, 559. "Actual malice exists if the statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *City Of Natchitoches v. Employers Reinsurance Corp.*, 02-0147, p. 5 (La.App. 3 Cir. 6/5/02), 819 So.2d 413, 418 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 725-26 (1964)). "Reckless disregard occurs when the defendant publishes the statement despite having a high awareness of the statement's probable falsity." *City of Natchitoches*, 819 So.2d at 418. Thus, an inquiry of whether Mr. LeBlanc's actions were intentional was not needed to prove defamation.

Neither a claim of malicious prosecution nor a claim of defamation requires the plaintiff to prove intent. Therefore, the trial court was legally correct in refusing to allow a jury interrogatory on whether Mr. LeBlanc's conduct was intentional.

IV.

**MOTION TO SUPPLEMENT APPEAL RECORD**

LIC implores us to supplement this appeal record to include "all pleadings, orders, and minute entries filed in the Chapter 7 bankruptcy proceedings" entitled "In Re: Jerry Edward LeBlanc and Kathleen Prudhomme LeBlanc" on the docket of the United States Bankruptcy Court for the Western District of Louisiana. We decline to do so. These items are not in the record of the trial court proceedings.

Appellate courts are not authorized to accept evidence. Further, the proposed submissions are insusceptible of judicial notice under La.Code Evid. arts. 201-202.

V.

**CONCLUSION**

For the above reasons, the judgment appealed from is affirmed. The judgment is amended to increase the general damage award from $6,125.00 to $150,000.00. Costs of this appeal are assessed to Lafayette Insurance Company.

**AMENDED AND, AS AMENDED, AFFIRMED. MOTION TO SUPPLEMENT THE RECORD DENIED.**