# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 08-1550


## SUCCESSION OF KATHRYN LAMBERT


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 11849 PD DIV. A
HONORABLE ERIC ROGER HARRINGTON, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## SHANNON J. GREMILLION
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Oswald A. Decuir, Jimmie C. Peters, and Shannon J. Gremillion, Judges.

Peters, J., dissents and assigns written reasons.

**AFFIRMED.**

**John Edward Fitz-Gerald**
**Attorney at Law**
**One Lakeshore Dr., Suite 1230**
**Lake Charles, LA 70629**
**(337) 494-1200**
**Counsel for Appellee:**
**Michael Glenn Lambert**

**C. R. Whitehead, Jr.**
**Whitehead Law Offices**
**P. O. Box 697**
**Natchitoches, LA 71458-0697**
**(318) 352-6481**
**Counsel for Appellant:**
**Julie Boudreaux**

**Jeffrey Howerton Thomas**
**Thomas Law Firm**
**P. O. Drawer 548**
**Natchitoches, LA 71458-0548**
**(318) 352-6455**
**Counsel for Appellee:**
**Jerry Glenn Lambert**

**William Alan Pesnell**
**The Pesnell Law Firm**
**P. O. Box 1794**
**Shreveport, LA 71166-1794**
**(318) 226-5577**
**Counsel for Appellee:**
**Jerry Glenn Lambert**

**Michael Glenn Lambert**
**In Proper Person**
**P. O. Box 78**
**Montalba, TX 75853**

**GREMILLION, Judge.**

Julie Lambert Boudreaux, daughter of the deceased Kathryn Lucille Andrews Lambert, appeals the trial court's judgment in favor of her father, Jerry Lambert, finding that Julie was not entitled to receive a 1/4 share of retirement funds upon Jerry's remarriage. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Kathryn died May 1, 1994, leaving behind a Last Will and Testament which provided:

> At my death, I leave all of the property I die possessed of to my two children, Julie Ann Boudreaux and Michael Glenn Lambert, in the proportions of an undivided one-half (½) interest to each, subject to the statutory usufruct which I hereby confirm in favor of my husband, Jerry Glenn Lambert, to last until his death or remarriage.

Since her death, litigation concerning Jerry's IRA, which was community property, has been ongoing. A judgment of possession recognized Julie and her brother as naked owners of their mother's one-half interest in the IRA account. Following Jerry's remarriage in 1997, his children demanded their one-half interest in the account. Jerry responded by seeking to have the IRA account removed from the list of community assets. The trial court found that the IRA account was community property and that La.R.S. 9:1426 applied to it to create a continuing usufruct in favor of Jerry.

In an unpublished opinion rendered in November 2007, we affirmed the finding of the trial court that the IRA account was community property, but remanded the case for a determination of whether the IRA was in pay status at the time of Kathryn's death.[1] We stated, "the legal usufruct created by La.R.S. 9:1426 would

---

[1] *Succession of Kathryn Andrews Lambert*, 07-630 (La.App. 3 Cir. 11/07/2007) (an unpublished opinion).

1

unquestionably exist if a recurring payment was being made from the Main Stay IRA at the time of Kathryn's death." Following a hearing in April 2008, the trial court found that the IRA was in a pay status prior to Kathryn's death and that the legal usufruct provided by La.R.S. 9:1426 applied to the IRA and "to all funds and proceeds from that account."

Julie now appeals and asserts as error the trial court's failure to address the applicability of La.R.S. 9:1426 to "lump sum payments" or "mandatory withdrawals" as required by federal law.

## DISCUSSION

Appellate review of a question of law is simply a decision as to whether the trial court's decision is legally correct or incorrect. *Jim Walter Homes, Inc. v. Jessen*, 98-1685 (La.App. 3 Cir. 3/31/99), 732 So.2d 699. If the trial court's decision was based on its erroneous application of law, its decision is not entitled to deference by the reviewing court. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983). When an appellate court finds that a reversible error of law was made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993).

Louisiana Revised Statute 9:1426 discusses a surviving spouse's usufruct of a retirement plan (emphasis added):

> A.(1) *If a recurring payment is being made* from a public or private pension or retirement plan, an annuity policy or plan, an individual retirement account, a Keogh plan, a simplified employee plan, or any other similar retirement plan, to one partner or to both partners of a marriage, and the payment constitutes community property, and one spouse dies, *the surviving spouse shall enjoy a legal usufruct over any portion of the continuing recurring payment which was the deceased spouse's share of their community property*, provided the source of the benefit is due to payments made by or on behalf of the survivor.

2

(2) This usufruct shall exist despite any provision to the contrary contained in a testament of the deceased spouse.

B. The usufruct granted by this Section shall be treated as a legal usufruct and is not an impingement upon the legitime and a naked owner shall not have a right to demand security.

The issues in this case are whether La.R.S. 9:1426 applies to a "lump sum periodic payment" or to a "mandatory withdrawal" as required by federal law.[2] Julie argues that the usufruct attaches to "the periodic payments but not to the principle." Julie goes on to state:

> There is nothing in this statutory provision which allows [Jerry] to withdraw either voluntarily or by any mandatory provision of federal tax law without having to pay over to [Julie] her 25% share of the principle of the retirement funds.

> It is respectfully submitted that the judgment of the trial court be modified to require [Jerry] to pay over to [Julie] 25% of the principle of any periodic or mandatory withdrawals from retirement funds required by federal law.

This issue appears to be res novo in Louisiana law and one that is not addressed by La.R.S. 9:1426. However, in examining the purpose behind La.R.S. 9:1426, we find that the legislature intended to protect the surviving spouse's usufruct of community retirement funds until his death in priority over the claims of naked ownership of the heirs' portion of the funds. The article does not distinguish between types of payments, only calling them "recurring payments." It does not distinguish between recurring payments comprised of principle versus interest, or a combination of both, although we note that the usufruct applies to *any portion* of the continuing "recurring payments." The overall policy of protecting a surviving spouse's ability to provide for himself during retirement appears to outweigh the heirs' right to the

---

[2] In order to avoid tax liabilities, federal law requires minimum mandatory distributions from a traditional IRA after the age of 70 ½.

community portion.  Spaht and Moreno, 16 La.Civ. L. Treatise, Matrimonial Regimes § 3.44 (3 ed.) recently addressed some of the issues surrounding IRA accounts in relation to La.R.S. 9:1426 (emphasis added) (footnotes omitted):[3]

> A narrow Louisiana statute adopted in 1990 protects the covered spouse who is collecting IRA or other pension benefits when the other spouse dies.  It was originally added to the Louisiana Civil Code as Article 890, redesignated as La.Civ. Code art. 890.1 and provided that the covered spouse will continue to receive the cash flow coming from the IRA until death even if the heirs of the deceased spouse might have claims to part of the asset under community property principles.  In 1997, Article 890.1 was redesignated as La.R.S. 9:1426.
>
> R.S. 9:1426 applies to "a public or private pension or retirement plan, an annuity policy or plan, an individual retirement account, a Keogh plan, simplified employee plan, or any other similar retirement plan."  If a spouse dies while the surviving spouse is receiving "a recurring payment" from the plan, the survivor enjoys a legal usufruct over the continuing recurring payment which was the deceased spouse's share of their community if the source of the benefit is traced to payments made by or on behalf of the survivor.  *The usufruct is mandatory and applies even if a testament provides otherwise.*
>
> Although R.S. 9:1426 calls this a "legal usufruct," *it is not provided that the usufruct terminates upon remarriage, as Civil Code Article 890 provides with respect to the regular legal usufruct of the surviving spouse.*  As a legal usufruct, it would be free of the normal requirements of security, but R.S. 9:1426 goes further and so specifies in the third paragraph.  It also provides that such a usufruct is not an impingement on the legitime of forced heirs.
>
> *The basic policy behind R.S. 9:1426—protecting the rights of the living spouse to a retirement benefit at the expense of the heirs of the deceased spouse*—would seem to apply also in the case of a death of the other spouse before regular distributions are begun.  However, R.S. 9:1426 strictly construed seems to apply if the "recurring payment is being made . . . and one spouse dies." *As suggested in the next section, the underlying policy seems broader, and the provision might well be construed to apply more broadly by analogy.*
>
> Since the right of the living spouse is a usufruct of money that would otherwise go to the heirs, the usufructuary has the right to spend

---

[3]We note that throughout the discussion in the article La.R.S. 9:1426 is mistakenly referred to as La.R.S. 9:1246.  We have taken the liberty to correct the typographical error throughout the quoted material.

those funds. In so doing, the usufructuary incurs the obligation to compensate the naked owners for those sums at the termination of the usufruct, which would normally be upon the death of the usufructuary.

Spaht and Moreno go on to discuss the case where recurring payments have not yet begun when the spouse dies. In addressing the issue of principle versus interest and forcing a surviving spouse to distribute a "lump sum" amount to the naked owners upon the death of a spouse, these authors note the unresolved complexities created by the statute, but suggest that public policy in favor of the surviving spouse outweighs the naked owners' rights (emphasis added):

> This apparent conclusion under the general law and R.S. 9:1426 is obviously a messy, complicated one. For example, the continuing IRA payment could be partly return of principal and partly investment income. The latter would presumably be a fruit owned by the usufructuary and the former would have to be accounted for to the naked owners at the termination of the usufruct over the recurring benefit.
>
> In any event, the IRA fund could well be considered as any other community asset in the absence of special rules, and there appear to be no special state law rules to govern the situation other than Article 890 by its terms and R.S. 9:1426 by analogy. Perhaps the trust law might be invoked, with the result that the heir's interest is not in the underlying IRA assets but in the beneficial rights under the trust. And, like life insurance ownership by the non-covered spouse, it is a right that is virtually worthless. *Also, it could be a disastrous tax situation if a state court in such a situation would order half the account paid to the heirs. This would probably be a distribution of the IRA subject to taxation and penalty, to be paid by the initial contracting spouse.*
>
> *Despite its complexity, however, this approach does balance the rights of the parties so as to give substantial protection to the surviving spouse's interests and does fulfill the policy of providing retirement income to spouses no longer able to work, rather than benefitting what would normally be the next generation.*
>     . . . .
>
> It would diminish [the surviving spouse's] interests to give half of [his IRA fund] up to the heirs of the deceased. Even under state policies, where a statutory usufruct would allow the survivor to enjoy the benefits of the fund until death or remarriage, there is a similar policy which may militate against recognition of the heirs' claims.

5

*Id.*

Spaht & Moreno suggest that the public policy in favor of the surviving spouse is so strong, that a fortiori, La.R.S. 9:1426 would probably apply *even if* recurring payments had not yet begun. Thus, any mandatory federal withdrawals are "recurring payments" within the meaning of the statute. The law provides us with nothing to restrict a broad reading of La.R.S. 9:1426. Accordingly, we find that federally mandated withdrawals fall within its ambit. Accordingly, we affirm the trial court's finding that any mandatory federal withdrawals of principle and/or interest are "recurring payments" subject to Jerry's usufruct.

The situation of voluntary lump sum withdrawals presents a more difficult issue. Although it is clear that the policy is to protect the retirement funds of the surviving spouse, one can envision a situation in which the surviving spouse withdraws a large portion of the funds pursuant to his legal usufruct and disposes of all of the money leaving nothing to reimburse the naked owner at his death. However, there is no present issue regarding lump sum withdrawals and this court does not issue advisory opinions. Accordingly, we leave this issue for another day.

## CONCLUSION

The judgment of the trial court finding that Jerry's IRA account was in pay status, and that his usufruct applies to recurring payments from his IRA account, is affirmed. Additionally, we find that federally mandated withdrawals are "recurring payments" within the meaning of La.R.S. 9:1426. All costs of this appeal are assessed against Julie Lambert Boudreaux.

**AFFIRMED.**

6

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**SUCCESSION OF KATHRYN ANDREWS LAMBERT**

PETERS, J., dissenting.

I respectfully disagree with the majority both in its determination that any future federally-mandated withdrawal of principal or interest is subject to Jerry Lambert's usufruct and in its conclusion that the issue of voluntary lump-sum withdrawals from the retirement plan is not now before us. I would hold that the usufruct mandated by La.R.S. 9:1426 applies only to recurring payments being made at the time Kathryn Lambert died, not to future federally-mandated increased or additional withdrawals of principal or interest nor to voluntary lump-sum withdrawals by Mr. Lambert.

The salient facts in this case were set forth in this court's prior unpublished opinion, *Succession of Kathryn Andrews Lambert*, 07-630, pp. 1-2 (La.App. 3 Cir. 11/7/07):

> Jerry and Kathryn Lambert were married and had two children, Julie and Michael. During the marriage, Jerry worked at Texaco and accumulated a substantial retirement pension. There is no dispute that the pension was a community asset. In June of 1989, Jerry and Kathryn elected to receive a lump sum payment of $320,851.76 from the pension in lieu of an annuity. This money was rolled over into an IRA with Main Stay mutual funds. The record is devoid of any evidence as to the pay status of the IRA at that time. In 1992, Kathryn executed a last will and testament, leaving all her property to Julie and Michael, subject to a usufruct in favor of Jerry until his death or remarriage. Kathryn died in May of 1994. At the time of Kathryn's death, the IRA had a value of $560,229.11.
> After her death, but prior to the opening of Kathryn's succession, Jerry rolled the Main Stay funds over to yet another IRA, run by Edward D. Jones. When the succession of Kathryn Lambert was opened in April of 1995, the detailed descriptive list included the account as community property. A subsequent judgment of possession recognized Julie and

Michael as naked owners of Kathryn's one-half interest in the account, subject to the usufruct defined by Kathryn's will.

Jerry remarried in 1997, prompting Julie and Michael to demand their mother's one-half interest in the account. Jerry responded by seeking to re-open the succession and have the IRA removed from the list of community assets. After much legal wrangling, the trial court ultimately decided that the IRA was derived from community funds and was, therefore, a community asset to be included in the succession. However, he found that La.R.S. 9:1426 applied, creating a legal usufruct in favor of Jerry to run until his death, despite the terms of Kathryn's will. From this decision, all parties appeal.

In the prior decision, this court affirmed the trial court's decision in part, but held that there was insufficient evidence in the record to determine whether recurring payments were being received from the Main Stay IRA during Mrs. Lambert's life and remanded the case, instructing the trial court to supplement the record on that narrow issue. In doing so, this court noted that "the legal usufruct created by La.R.S. 9:1426 would unquestionably exist if a recurring payment was being made from the Main Stay IRA *at the time of Kathryn's [Mrs. Lambert's] death*." *Id*. at p.4 (emphasis added).

On remand, the trial court factually concluded that at the time of Mrs. Lambert's death, the Main Stay IRA was making distributions of $3,497.06 per month and, thus, was "in pay status." Based on this conclusion, it entered a judgment that "the legal usufruct of La.R.S. 9:1426 attaches to all funds and proceeds from that account [the Main Stay IRA]." The trial court's factual finding that the IRA was "in pay status" at Mrs. Lambert's death is not the issue before us. Instead, we are called upon to determine the extent, if any, that Mr. Lambert's usufruct applies to future additional or increased distributions that are mandated by federal rules, as well as any attempt by Mr. Lambert to receive lump-sum payments of either the principal or accumulated interest. The trial court's judgment applies the usufruct to both. The majority agrees with the trial court on the first issue, but declines to address the

second.

The majority finds that any future distributions caused by federally-mandated withdrawal rules would be subject to the usufruct established by La.R.S. 9:1426. In reaching this conclusion, the majority relies solely on the discussion of La.R.S. 9:1426 in Spaht and Moreno, 16 La.Civ.L.Treatise, Matrimonial Regimes § 3.44 (3 ed.).

I do not find that this authority stands for the proposition espoused by the majority. At best, it recognizes that the specific language of the statute does not address all the situations involving pension plans that may arise at the death of a spouse. While acknowledging that the basic policy behind La.R.S. 9:1426 is "protecting the rights of the living spouse to a retirement benefit at the expense of the heirs of the deceased spouse," the authors attempt to expand its application based on suggestions that "the underlying policy *seems* broader, and the provision *might well be* construed to apply more broadly by analogy." *Id.* (emphasis added). The conclusion of the authors is not, as the majority suggests, that La.R.S. 9:1426 is applicable to all situations of pension distribution, but that the approach suggested by the authors would fulfill an unstated legislative policy. In fact, the authors even suggest that La.R.S. 9:1426 "would *seem* to apply also in the case of a death of the other spouse *before* regular distributions are begun." *Id.* (emphasis added).

In interpreting a statute, we must start with the mandate that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law *shall* be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9 (emphasis added). Louisiana Revised Statutes 9:1426 is clear and unambiguous and its strict application will lead to no absurd consequences. The usufruct provided to the surviving spouse is

triggered by a recurring payment that is already being made at the time of the other spouse's death, and the usufruct over the amount being paid at that time is maintained as a legal usufruct. This language satisfies the basic policy behind the statute—that the retirement benefit being enjoyed by the surviving spouse *at the time of the death of the other spouse* is protected at the expense of the heirs. As I read the statute, the legislature obviously concluded that this specific language was sufficient to protect the surviving spouse. That is to say, if a couple is receiving a retirement benefit that is sufficient for their needs, one can assume that it will be sufficient for the survivor's needs. To extend the usufruct to any increases, mandated or otherwise, or any lump sum withdrawals would defeat the ownership rights of the legal heirs. The authors of the Treatise, and in following their logic, the majority in this matter, attempt to substitute their own policy conclusions for the clear letter of the law.

Given the clear language of the statute, I would not extend Mr. Lambert's usufruct to any distributions over and above the monthly amount being paid at the time of Mrs. Lambert's death. At the same time, I would address Ms. Boudreaux's argument that the trial court erred in not holding that Mr. Lambert's usufruct does not extend to any lump sum payments, and would rule in her favor for the reasons previously stated. The majority declines to address this issue, finding that "there is no present issue regarding lump sum withdrawals." However, the trial court's judgment is not limited to recurring payments; it attaches the usufruct to "all funds and proceeds" from the Main Stay IRA, which would include any lump-sum withdrawals from that account. If this court refuses to address that issue, then in the future the issue of lump-sum withdrawals would be *res judicata*. Thus, a decision from this court addressing the issue of lump-sum withdrawals is not an advisory opinion.

Accordingly, I would reverse the trial court's judgment in part and amend it to hold that the legal usufruct of La.R.S. 9:1426 attaches only to the recurring payments of $3,497.06 per month that were being made at the time of Kathryn Lambert's death.