GREMILLION, Judge.
11 Julie Lambert Boudreaux, daughter of the deceased Kathryn Lucille Andrews Lambert, appeals the trial court’s judgment in favor of her father, Jerry Lambert, finding that Julie was not entitled to receive a 1/4 share of retirement funds upon Jerry’s remarriage. For the following reasons, we affirm.
*416 FACTUAL AND PROCEDURAL BACKGROUND
Kathryn died May 1, 1994, leaving behind a Last Will and Testament which provided:
At my death, I leave all of the property I die possessed of to my two children, Julie Ann Boudreaux and Michael Glenn Lambert, in the proportions of an undivided one-half Qh) interest to each, subject to the statutory usufruct which I hereby confirm in favor of my husband, Jerry Glenn Lambert, to last until his death or remarriage.
Since her death, litigation concerning Jerry’s IRA, which was community property, has been ongoing. A judgment of possession recognized Julie and her brother as naked owners of their mother’s one-half interest in the IRA account. Following Jerry’s remarriage in 1997, his children demanded their one-half interest in the account. Jerry responded by seeking to have the IRA account removed from the list of community assets. The trial court found that the IRA account was community property and that La.R.S. 9:1426 applied to it to create a continuing usufruct in favor of Jerry.
In an unpublished opinion rendered in November 2007, we affirmed the finding of the trial court that the IRA account was community property, but remanded the case for a determination of whether the IRA was in pay status at the time of Kathryn’s death.[1] We stated, “the legal usufruct created by La.R.S. 9:1426 would 12unquestionably exist if a recurring payment was being made from the Main Stay IRA at the time of Kathryn’s death.” Following a hearing in April 2008, the trial court found that the IRA was in a pay status prior to Kathryn’s death and that the legal usufruct provided by La.R.S. 9:1426 applied to the IRA and “to all funds and proceeds from that account.”
Julie now appeals and asserts as error the trial court’s failure to address the applicability of La.R.S. 9:1426 to “lump sum payments” or “mandatory withdrawals” as required by federal law.
DISCUSSION
Appellate review of a question of law is simply a decision as to whether the trial court’s decision is legally correct or incorrect. Jim Walter Homes, Inc. v. Jessen, 98-1685 (La.App. 3 Cir. 3/31/99), 732 So.2d 699. If the trial court’s decision was based on its erroneous application of law, its decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983). When an appellate court finds that a reversible error of law was made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993).
Louisiana Revised Statute 9:1426 discusses a surviving spouse’s usufruct of a retirement plan (emphasis added):
A. (1) If a recurring payment is being made from a public or private pension or retirement plan, an annuity policy or plan, an individual retirement account, a Keogh plan, a simplified employee plan, or any other similar retirement plan, to one partner or to both partners of a marriage, and the payment constitutes community property, and one spouse dies, the sumving spouse shall enjoy a legal usufruct over any portion of the continuing recurring payment which was the deceased spouse’s share of their *417 community property, provided the source of the benefit is due to payments made by or on behalf of the survivor. |s(2) This usufruct shall exist despite any provision to the contrary contained in a testament of the deceased spouse. B. The usufruct granted by this Section shall be treated as a legal usufruct and is not an impingement upon the legitime and a naked owner shall not have a right to demand security.
The issues in this case are whether La. R.S. 9:1426 applies to a “lump sum periodic payment” or to a “mandatory withdrawal” as required by federal law.[2] Julie argues that the usufruct attaches to “the periodic payments but not to the principle.” Julie goes on to state:
There is nothing in this statutory provision which allows [Jerry] to withdraw either voluntarily or by any mandatory provision of federal tax law without having to pay over to [Julie] her 25% share of the principle of the retirement funds.
It is respectfully submitted that the judgment of the trial court be modified to require [Jerry] to pay over to [Julie] 25% of the principle of any periodic or mandatory withdrawals from retirement funds required by federal law.
This issue appears to be res novo in Louisiana law and one that is not addressed by La.R.S. 9:1426. However, in examining the purpose behind La.R.S. 9:1426, we find that the legislature intended to protect the surviving spouse’s usu-fruct of community retirement funds until his death in priority over the claims of naked ownership of the heirs’ portion of the funds. The article does not distinguish between types of payments, only calling them “recurring payments.” It does not distinguish between recurring payments comprised of principle versus interest, or a combination of both, although we note that the usufruct applies to any portion of the continuing “recurring payments.” The overall policy of protecting a surviving spouse’s ability to provide for himself during retirement appears to outweigh the heirs’ right to the | community portion. Spaht and Moreno, 16 La.Civ. L. Treatise, Matrimonial Regimes § 3.44 (3 ed.) recently addressed some of the issues surrounding IRA accounts in relation to La.R.S. 9:1426 (emphasis added) (footnotes omitted): [3]
A narrow Louisiana statute adopted in 1990 protects the covered spouse who is collecting IRA or other pension benefits when the other spouse dies. It was originally added to the Louisiana Civil Code as Article 890, redesignated as La. Civ.Code art. 890.1 and provided that the covered spouse will continue to receive the cash flow coming from the IRA until death even if the heirs of the deceased spouse might have claims to part of the asset under community property principles. In 1997, Article 890.1 was redesignated as La.R.S. 9:1426.
R.S. 9:1426 applies to “a public or private pension or retirement plan, an annuity policy or plan, an individual retirement account, a Keogh plan, simplified employee plan, or any other similar retirement plan.” If a spouse dies while the surviving spouse is receiving “a recurring payment” from the plan, the survivor enjoys a legal usufruct over the continuing recurring payment which was the deceased spouse’s share of their *418 community if the source of the benefit is traced to payments made by or on behalf of the survivor. The usufruct is mandatory and applies even if a testament provides otherwise.
Although R.S. 9:1426 calls this a “legal usufruct,” it is not provided that the usufruct terminates upon remarriage, as Civil Code Article 890 provides with respect to the regular legal usufruct of the surviving spouse. As a legal usu-fruct, it would be free of the normal requirements of security, but R.S. 9:1426 goes further and so specifies in the third paragraph. It also provides that such a usufruct is not an impingement on the legitime of forced heirs.
The basic policy behind R.S. 9:14-26— protecting the rights of the living spouse to a retirement benefit at the expense of the heirs of the deceased spouse — would seem to apply also in the case of a death of the other spouse before regular distributions are begun. However, R.S. 9:1426 strictly construed seems to apply if the “recurring payment is being made ... and one spouse dies.” As suggested in the next section, the underlying policy seems broader, and the provision might well be construed to apply more broadly by analogy.
Since the right of the living spouse is a usufruct of money that would otherwise go to the heirs, the usufructuary has the right to spend | ¡¡those funds. In so doing, the usufructuary incurs the obligation to compensate the naked owners for those sums at the termination of the usufruct, which would normally be upon the death of the usufructuary.
Spaht and Moreno go on to discuss the case where recurring payments have not yet begun when the spouse dies. In addressing the issue of principle versus interest and forcing a surviving spouse to distribute a “lump sum” amount to the naked owners upon the death of a spouse, these authors note the unresolved complexities created by the statute, but suggest that public policy in favor of the surviving spouse outweighs the naked owners’ rights (emphasis added):
This apparent conclusion under the general law and R.S. 9:1426 is obviously a messy, complicated one. For example, the continuing IRA payment could be partly return of principal and partly investment income. The latter would presumably be a fruit owned by the usu-fructuary and the former would have to be accounted for to the naked owners at the termination of the usufruct over the recurring benefit.
In any event, the IRA fund could well be considered as any other community asset in the absence of special rules, and there appear to be no special state law rules to govern the situation other than Article 890 by its terms and R.S. 9:1426 by analogy. Perhaps the trust law might be invoked, with the result that the heir’s interest is not in the underlying IRA assets but in the beneficial rights under the trust. And, like life insurance ownership by the non-covered spouse, it is a right that is virtually worthless. Also, it could be a disastrous tax situation if a state court in such a situation would order half the account paid to the heirs. This would probably be a distribution of the IRA subject to taxation and penalty, to be paid by the initial contracting spouse.

Despite its complexity, however, this approach does balance the rights of the parties so as to give substantial protection to the surviving spouse’s interests and does fulfill the policy of providing retirement income to spouses no longer able to work, rather than benefitting what would normally be the next generation.

*419 [[Image here]]
It would diminish [the surviving spouse’s] interests to give half of [his IRA fund] up to the heirs of the deceased. Even under state policies, where a statutory usufruct would allow the survivor to enjoy the benefits of the fund until death or remarriage, there is a similar policy which may militate against recognition of the heirs’ claims.
[[Image here]]
Spaht & Moreno suggest that the public policy in favor of the surviving spouse is so strong, that a fortiori, La.R.S. 9:1426 would probably apply even if recurring payments had not yet begun. Thus, any mandatory federal withdrawals are “recurring payments” within the meaning of the statute. The law provides us with nothing to restrict a broad reading of La. R.S. 9:1426. Accordingly, we find that federally mandated withdrawals fall within its ambit. Accordingly, we affirm the trial court’s finding that any mandatory federal withdrawals of principle and/or interest are “recurring payments” subject to Jerry’s usufruct.
The situation of voluntary lump sum withdrawals presents a more difficult issue. Although it is clear that the policy is to protect the retirement funds of the surviving spouse, one can envision a situation in which the surviving spouse withdraws a large portion of the funds pursuant to his legal usufruct and disposes of all of the money leaving nothing to reimburse the naked owner at his death. However, there is no present issue regarding lump sum withdrawals and this court does not issue advisory opinions. Accordingly, we leave this issue for another day.
CONCLUSION
The judgment of the trial court finding that Jerry’s IRA account was in pay status, and that his usufruct applies to recurring payments from his IRA account, is affirmed. Additionally, we find that federally mandated withdrawals are “recurring payments” within the meaning of La.R.S. 9:1426. All costs of this appeal are assessed against Julie Lambert Boudreaux.
AFFIRMED.
PETERS, J., dissents and assigns written reasons.

. Succession of Kathryn Andrews Lambert, 07-630 (La.App. 3 Cir. 11/07/2007) (an unpublished opinion).

. In order to avoid tax liabilities, federal law requires minimum mandatory distributions from a traditional IRA after the age of 70 14.

. We note that throughout the discussion in the article La.R.S. 9:1426 is mistakenly referred to as La.R.S. 9:1246. We have taken the liberty to correct the typographical error throughout the quoted material.